**Cade Allen PLAZINICH,
Petitioner–Appellant,**

v.

**James A. LYNAUGH, Director, Texas
Department of Corrections,
Respondent–Appellee.**

**No. 86–2574.**

United States Court of Appeals,
Fifth Circuit.

May 2, 1988.

---

Cade A. Plazinich, pro se.

William C. Zapalac, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before CLARK, Chief Judge, JOLLY, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This state prisoner's petition for habeas corpus relief asks us to determine whether his written confession to murder was obtained in violation of the rule of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). We find that after Plazinich's formal interrogation had ceased upon advice of counsel, the interrogation was not resumed by a policeman's remarks to him on the way back to jail. Hence, there was no violation of *Edwards*, and we affirm the denial of relief.

## BACKGROUND

Both Plazinich and his temporary companion Patricia Taylor Bolig were arrested in late May 1980 in connection with the murder of an acquaintance earlier that month. At a probable cause hearing on June 2, Plazinich received the first of several *Miranda*[1] warnings and was appointed counsel. Two days later, he confessed

to the murder of Steven Cotton. After a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the state trial court determined the confession to have been voluntarily made and admitted it in evidence. Plazinich was convicted and his sentence enhanced by virtue of prior convictions to a life term.

The testimony in state court indicated that on June 4, officer Anthony Rossi checked Plazinich out of the Harris County jail and took him to the Harris County Sheriff's detective offices for interrogation. Officer L.W. Ramsey was waiting for them. Immediately upon Plazinich's arrival, the officers again read his *Miranda* rights, which he indicated he understood. Plazinich was informed that he would be questioned about the death of Steven Cotton. He called his attorney, who advised him not to make a statement at that time. When Plazinich told the officers he would not make a statement, they terminated the interview, and Officer Rossi began to take Plazinich back to the Harris County jail. En route, Officer Rossi told Plazinich that Patricia Taylor had tried to commit suicide by slashing her wrists in the jail. Plazinich testified that he had already heard a rumor about the suicide attempt. The parties dispute whether Officer Rossi also suggested that a plea bargain might be made so that Taylor would not have to take the rap by herself. At no time does Plazinich claim that he was physically abused.

Plazinich asked Rossi if he could speak to an assistant district attorney, indicating he would consider making a statement. Rossi and Plazinich returned to the Detective Division building and Paul Mavis, an assistant district attorney, was summoned. Mavis advised Plazinich concerning the effects of a written confession on both his case and that of Ms. Taylor. Plazinich says he was allowed to telephone his attorney. The parties dispute whether Mavis promised to dismiss the case against Ms. Taylor or to reduce charges against Plazinich in return for a confession. Plazinich was again advised of his *Miranda* rights

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

and proceeded to execute a written confession incorporating a formal waiver of those rights. He initialed each warning.

In the written confession, Plazinich exonerated Ms. Taylor from any prior knowledge of or participation in the shooting itself. He further stated, "I am giving this statement voluntarily because I don't want innocent people getting involved in a crime I committed."

## ANALYSIS

Plazinich contends that by refusing to submit to formal interrogation upon advice of his counsel, Officer Rossi was prohibited, under *Edwards v. Arizona*, from mentioning Patricia Taylor's attempted suicide to him shortly thereafter. *Edwards* held that after an accused invokes his right to counsel, he is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication with the police. 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85. In *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), the Supreme Court elaborated upon *Edwards* by explaining that a defendant "initiates" further communication with the police if he has "evinced a willingness and a desire for a generalized discussion about the investigation[.]" *Id.* at 1045–46, 103 S.Ct. at 2835. His comment may not be "merely a necessary inquiry arising out of the incidents of the custodial relationship." *Id.* at 1046, 103 S.Ct. at 2835. Based on these statements, Plazinich argues that Rossi, rather than he himself, "initiated" the conversation about Taylor's suicide attempt in such a fashion as to compel an incriminating response from him. Plazinich's argument is both subtle and sophisticated, but it is ultimately incorrect.

Our response to this argument is best approached by recapitulating the background of *Edwards*. In that case, the defendant had voluntarily submitted to questioning but later stated that he wished to talk with an attorney before the discussions with the police continued. Notwithstanding this request, detectives approached defendant the next day and, when he refused to speak with them, they stated that he "had to" talk. The Supreme Court held that subsequent incriminating statements violated the defendant's fifth amendment rights. The essence of the Court's holding may be found in two points:

> [W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

451 U.S. at 484–85, 101 S.Ct. at 1884–85 (footnote omitted). The Supreme Court later characterized this holding as "in effect a prophylactic rule, designed to protect an accused in police custody from being badgered by police officers in the manner in which the defendant in *Edwards* was." *Oregon v. Bradshaw*, 462 U.S. at 1044, 103 S.Ct. at 2834.

Our court recently canvassed *Edwards* and its Supreme Court progeny and concluded that, "we think it is important to draw attention to the police overreaching exhibited in *[Edwards]*. . . . We think that it is clear that the motivating factor behind the *Edwards* rule is to protect against and to discourage police interference with the free exercise of the right to counsel." *Griffin v. Lynaugh*, 823 F.2d 856, 861 (5th Cir.1987). Moreover, we noted, the cases following *Edwards* "are clearly indicative to us that in the absence of some police interference with the exercise of the right to counsel of the accused, the *Edwards* rule is to be strictly and narrowly applied[.]" *Id.* at 862. Our court has, in other words, rejected an interpretation of *Edwards'* prophylactic rule that is divorced

from the context of badgering police conduct from which the rule sprang.

Thus, it may be said initially of the present case that, unlike *Edwards*, the police conduct here bore no indication of overreaching. Plazinich was allowed to speak to his attorney and, indeed, accepted his advice originally to terminate formal custodial interrogation. Plazinich changed his mind and volunteered, with little or no express prompting to do so by Officer Rossi, that he would consider making his statement. Presumably, this change of heart occurred because Officer Rossi informed Plazinich that his co-defendant had attempted suicide because she was afraid she would face responsibility for the whole crime herself. It is difficult to conceive, however, that one informational comment made to a defendant can be so "overreaching" as to violate the spirit of *Edwards*. A further indication that Officer Rossi's single comment was not overreaching lies in Plazinich's acknowledgement that he had already heard a rumor that Patricia Taylor had cut her wrists.

Not only do we find a lack of inherently overreaching police conduct, but we cannot say that the police "initiated" further "interrogation" with Plazinich in violation of the *Edwards* rule. In *Oregon v. Bradshaw*, 462 U.S. at 1044, 103 S.Ct. at 2834, the Supreme Court divided the *Edwards* inquiry into two parts: if an accused has requested an attorney, further custodial interrogation is permissible only if (a) the suspect himself initiates dialogue with the authorities, and (b) subsequent events indicate a waiver of the fifth amendment right to have counsel present during the interrogation.[2] The Court then held that a suspect's question, "Well, what is going to happen to me now?", taken in context, indicated a desire to speak further with the police without the assistance of counsel. The Court added:

> While we doubt that it would be desirable to build a superstructure of legal refinements around the word "initiate" in this context, there are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to "initiate" any conversation or dialogue. *Id.* at 1045, 103 S.Ct. at 2835.

In this case, there can be no doubt that Plazinich himself "initiated" further formal contacts with the police when he indicated to Officer Rossi that he wanted to consider making a statement. Plazinich contends, however, that Officer Rossi "initiated" dialogue with Plazinich after the latter's assertion of his right to counsel. *See Wyrick v. Fields*, 459 U.S. 42, 46, 103 S.Ct. 394, 395, 74 L.Ed.2d 214 (1982). Certainly Rossi spoke first, but the definitive question is whether his informational comment to Plazinich "initiated" communications in violation of *Edwards*. *Edwards* appears to hold to the contrary, because it emphasizes that the police have fatally erred only when they recommence interrogation after an accused has asserted his right to counsel.[3] Officer Rossi's reporting to Plazinich one true fact concerning his co-defendant cannot be interpreted to have reinstituted custodial interrogation. It is true that in *Oregon v. Bradshaw, supra*, Justice Rehnquist stated that routine matters such as requests for a drink of water or to use the telephone should not be held to " 'initiate' any conversation or dialogue." 462 U.S. at 1045, 103 S.Ct. at 2835. In so holding, however, the opinion did not say that any exchange between the police and the accused not pertaining to his maintenance and care *ipso facto* becomes the sort of custodial interrogation condemned by *Edwards*. There is a considerable gulf be-

**2.** The events following Plazinich's decision to consider making a statement yielded what has been found by the state and federal district courts to be a voluntary confession. Although that determination is subject to de novo review by the federal court on habeas corpus, *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), based on the facts recited above, we see no reason to disagree with that interpreta-

tion. We reject Plazinich's contention that the confession was coerced.

**3.** *E.g., Edwards* states: "We ... emphasize that it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." 451 U.S. at 485, 101 S.Ct. at 1885.

tween routine requests on the one hand and custodial interrogation on the other. This communication by Rossi seems much more noninquisitorial than the outright resumption of questioning forbidden by *Edwards* and *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). Officer Rossi did not ask a question. In providing information to Plazinich, he had no reason to anticipate nor could he compel an immediate response. Rossi did not pursue the matter beyond his first remarks. Plazinich *offered* to consider making a statement.

Our conclusion that Rossi's comment did not resume custodial interrogation and thus "initiate" a dialogue with Plazinich is reinforced by the citation in *Edwards* to *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). *Innis* clarified the circumstances under which custodial interrogation, triggering the requirement for *Miranda* warnings, might take place. *Innis* stated that,

> "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.... A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation." 446 U.S. at 301, 100 S.Ct. at 1689–90 (footnotes omitted).

*Edwards,* citing *Innis,* stated that, "[a]bsent such interrogation, there would have been no infringement of the right that Edwards invoked and there would be no occasion to determine whether there had been a valid waiver." 451 U.S. at 486, 101 S.Ct. at 1885. Under the *Innis* test, Rossi's comment is not tantamount to "interrogation." His information concerning Patri-

cia Taylor was not objectively likely "to elicit an incriminating response from the suspect," who had just minutes before declined to be interrogated. In the brief and informal context in which it was made, the comment could at most be characterized as offering Plazinich "food for thought" rather than seeking to provoke an incriminating response. Plazinich's request to speak to a district attorney and tentative offer to make a statement show that he was deliberating the impact of the information but did not feel compelled to respond. Rossi's remarks to Plazinich did not constitute "interrogation" in violation of the *Innis* rule. By extension, they did not recommence custodial interrogation in violation of *Edwards.*

Because the *Jackson* hearing held in the state court disclosed all the facts pertinent to Plazinich's claim, there is no need for a federal evidentiary hearing as sought by Plazinich.[4]

For the foregoing reasons, the judgment of the district court denying relief is AFFIRMED.

---

**4.** On appeal, Plazinich for the first time asserts that his confession was taken in violation of *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct.

1404, 89 L.Ed.2d 631 (1986). We decline to review this unexhausted claim.