**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Conrado Jesus GOMEZ,
Defendant–Appellant.**

**No. 87–5633.**

United States Court of Appeals,
Fifth Circuit.

April 18, 1990.

As Amended on Denial of Rehearing
June 12, 1990.

Conrado Jesus Gomez, Big Springs, Tex., pro se.

LeRoy Morgan Jahn, C. Larry Mathews, Jr., Asst. U.S. Attys., San Antonio, Tex., Arthur F. Norton, Crim. Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before WISDOM, JOHNSON, and DUHÉ, Circuit Judges.

WISDOM, Circuit Judge:

On October 19, 1987, Conrado Gomez was convicted after jury trial of one count of conspiracy to possess heroin and cocaine with intent to distribute these drugs in violation of 21 U.S.C. §§ 841(a)(1) and 846, three counts of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Because certain material evidence may have been erroneously admitted at trial, we REVERSE those convictions and REMAND for a hearing on the admissibility of the evidence in question. If the district court finds that the evidence was erroneously admitted, then this reversal shall be final. If the district court finds that the evidence was properly admitted, then the district court shall reinstate the trial court's original judgment.

I

In September 1986, Cesar Castillo began cooperating with government agents as-

---

signed to the Drug Enforcement Task Force in Eagle Pass, Texas. The agents made arrangements to have Castillo introduce Juan Villareal, an undercover informer, to Jesus Duran from whom Castillo had been purchasing cocaine. The introduction to Duran was planned as part of an effort to penetrate the drug operation that the agents believed was headed by the defendant/appellant, Conrado Gomez.

At the meeting between Villareal and Duran, Duran stated that he could provide Villareal with heroin that would be supplied by Duran's brother-in-law. Gomez is indeed Duran's brother-in-law. Gomez argues, however, that Duran was using the term "brother-in-law" loosely and was not, in that context, using that term to refer to Gomez.

On September 17, 1986, Villareal, accompanied by two undercover police officers, met with Duran and discussed purchasing heroin. Duran stated that his brother-in-law, to whom he also referred as "Conrado" and "El General", supplied the heroin and made all decisions concerning its sale. After that meeting, the undercover officers and Villareal proceeded to Duran's residence where they purchased approximately twelve and a half grams of heroin from Duran. After the transaction was completed, Duran instructed his wife to give the money to "Conrado".

Over the course of several weeks following that purchase, undercover agents made several more purchases of heroin from Duran. The agents never met the appellant, Gomez, despite their efforts to do so. On November 14, 1986, after an undercover agent purchased seven ounces of heroin from Duran, Duran was arrested.

After his arrest, Duran agreed to telephone Gomez at his home. That conversation, which was recorded, was translated from Spanish as follows:

GOMEZ: "What's happening?"

DURAN: "Ready"

GOMEZ: "It is taken care of, Matamoros?"

DURAN: "Yes, I'll see you later."

Gomez was arrested later on a warrant and charged with conspiracy to possess and with possession with intent to distribute heroin and cocaine.

## II

Gomez urges on this court several arguments for reversal of his convictions. With one exception, they are without merit.

■■■ The federal wiretap statute, 18 U.S.C. § 2515, provides that,

[w]henever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial....

An exception to that proscription is contained in 18 U.S.C. § 2511(2)(c) which exempts communications that have been taped with the consent of one of the parties. Thus, the tape of the telephone call from Duran to Gomez, placed after Duran's arrest, would be admissible evidence only if either Duran or Gomez had consented to the government interception of that call. There is no evidence that Gomez consented. The government alleges that Duran consented to the taping of the call, but the record is devoid of evidence of such consent.

■■■ Consent to interception of a telephone call may be inferred from knowledge that the call is being monitored. *See United States v. Jones*, 839 F.2d 1041, 1050 (5th Cir.1988); *United States v. Kolodziej*, 706 F.2d 590, 593 (5th Cir.1983). But, in the present case, there is no evidence in the record to show Duran's knowledge of the monitoring. At trial, the prosecution asked one of the officers present while Duran placed the call to Gomez whether Duran had consented to the tape recording of the call. After defense counsel objected to that question on hearsay grounds, the prosecution withdrew the question and never attempted to ask it again. Thus, there is nothing in the record directly addressing the question of Duran's knowledge of or consent to the agents' recording the call. Because the government bears the burden of proving consent to interception of the telephone call,[1] and the government has not

---

1. *See United States v. Jones,* 839 F.2d 1041, 1050 (5th Cir.1988); *United States v. Kolodziej,* 706     F.2d 590, 593 (5th Cir.1983).

carried that burden, this court must hold that the tape of the telephone conversation between Gomez and Duran made after Duran's arrest may have been erroneously admitted into evidence at trial.

■ Having determined that the tape recording may have been erroneously admitted into evidence, we must determine whether that error affected the appellant's substantial rights, or alternatively, was harmless error. *See* Fed.R.Crim.P. 52(a). In this circuit, "the test for harmless error in this context is 'whether the trier of fact would have found the defendant guilty beyond a reasonable doubt with the additional evidence [excluded]'." *U.S. v. Roberts,* 887 F.2d 534, 536 (5th Cir.1989) (quoting *United States v. Lay,* 644 F.2d 1087, 1091 (5th Cir. Unit A), *cert. denied,* 454 U.S. 869, 102 S.Ct. 336, 70 L.Ed.2d 172 (1981)). *See also, United States v. Lueben,* 812 F.2d 179, 187 n. 7 (5th Cir.1987). We cannot say with certainty that the jury in the instant case would have found Gomez guilty beyond a reasonable doubt had the tape of the telephone call been excluded. We find, therefore, that erroneous admission of the tape would not have been harmless error. We REVERSE the convictions and REMAND this case for a hearing on whether Duran consented to the taping of his telephone conversation with Gomez. If the district court finds that Duran did consent to the taping, then the district court shall reinstate its original judgment. If the district court finds that Duran did not consent to the taping, then the reversal of the convictions shall be final.