CORRECTED

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
FILED
JAN 1 4 1993
RICHARD E. WINDHORST, JR.
CLERK

---

No. 91-5697

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM MICHAEL CANNON,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Western District of Texas

---

Before WILLIAMS, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Police arrested William Michael Cannon during a search of his ranch. Cannon appeals his conviction on charges of possession of ephedrine, a proscribed precursor chemical, with the intent to manufacture methamphetamine; conspiracy to manufacture methamphetamine; maintenance of a place for the purpose of manufacturing methamphetamine; and use of a firearm in relation to a drug trafficking offense. After police gave Cannon Miranda warnings, he requested the assistance of counsel. We are asked to pass on the admissibility of statements he gave in response to later interrogation, but cannot do so in light of inadequately developed facts. We vacate the conviction and remand for fact findings.

On the morning of February 19, 1990, state and federal agents executed a search warrant on a ranch in Bandera County, Texas. The warrant authorized police to search the entire 140 acre property, including a house and barn, for evidence of methamphetamine manufacturing. As officers approached the barn, they saw Cannon running from it with his pants on fire. They chased Cannon, tackled him and extinguished the flames. When Cannon was tackled, a loaded .38 caliber pistol flew from his waistband.

Meanwhile, police entered the house on the property and arrested Sandra Green. Both Cannon and Green were given <u>Miranda</u> warnings. Cannon then requested the assistance of counsel, and Sergeant Land ceased questioning him. Cannon was placed under the supervision of Deputy Johnson while other officers searched the property.

Inside the barn, police found burning residue which analysis later showed to include methamphetamine. They also found implements usable to produce methamphetamine. These included litmus papers, rubber gloves, a scale, and a variety of glassware. Officers also found a partial recipe, apparently for making methamphetamine from the precursor chemical ephedrine. A shotgun hung on a wall of the barn. The barn smelled strongly of methamphetamine, and police found a small baggie of methamphetamine powder in a matchbox.

In a closet of the house, officers found a false circuit box, which concealed canisters holding marijuana and methamphetamine

powder. Police also seized a small amount of methamphetamine powder from a bedroom dresser drawer. Later that day, officers discovered a soda bottle under a rock on the property. The liquid in the bottle contained methamphetamine in a 13 percent concentration. This liquid solution could have been converted into ingestible methamphetamine powder.

Several hours after the search began, Deputy Johnson engaged Cannon in the conversation which is the principal focus of this appeal. The facts regarding the progression of this conversation are not clearly established. All agree that Johnson first asked Cannon about motorcycles located at the ranch. Their talk then turned to the manufacture of methamphetamine at the site. Cannon did not testify at trial, but contends on appeal that Johnson began questioning him about such criminal activity. The government responds that Johnson's testimony shows that Cannon initiated the discussion of incriminating matters. Johnson testified that the conversation turned to "the execution of the search warrant." He did not say who turned it to that subject, and the record is unclear:

> Q: What did he initially say when you started talking about the search warrant, got off the subject of the motorcycles?
> A: That a friend of his had gotten in trouble and told the law about Mr. Cannon to get his self out of trouble and that the friend had told Mr. Cannon that there was going to be a search warrant on his place . . . .

The use of "you" in the question is ambiguous. If it meant the singular it would indicate that Johnson initiated the discussion of the warrant.

Once the search became their topic, Johnson questioned Cannon about the manufacture and presence of drugs at the ranch. Cannon gave incriminating answers, including an admission that ephedrine was present. Johnson told Land that Cannon wanted to talk to Land. Land gave Cannon another Miranda warning, and Cannon sought to bargain for Green's release before providing information. Land could not agree to a deal, but Cannon repeated to Land what he had told Johnson. The character of this conversation is disputed, with the government saying Cannon volunteered information and Cannon claiming to have responded to police questioning. In any event, Cannon identified persons who had manufactured methamphetamine at the ranch, and admitted to receiving some of the product as payment. He also admitted to helping once manufacture methamphetamine. Later that day, Cannon led officers to a tire in whose inner tube ephedrine was hidden. Land testified that officers might not have found these chemicals without Cannon's assistance.

II

Cannon claims that his statements to Johnson and Land, and evidence found as a result of them, should not have been admitted at his trial. He contends that such statements were obtained after his invocation of the right to counsel in violation of Edwards v. Arizona, 451 U.S. 477, 101 S. Ct. 1880 (1981). Before reaching the merits, we must consider whether Cannon waived this claim by failing to raise it before trial as required by Fed. R. Crim. P. 12.

## A

Rule 12(b)(3) requires that motions to suppress evidence must be raised before trial. Rule 12(f) provides for waiver of argument for the suppression of evidence not made before trial. Cannon objected to the use of evidence seized at the ranch at a pretrial hearing. Although the memorandum submitted with Cannon's motion to suppress cited <u>Edwards</u>, it did not allege nor did his counsel develop at the suppression hearing that Cannon had asserted his right to counsel. No witness at the hearing mentioned that Cannon requested to speak to counsel when first questioned. No evidence was sought to determine whether Johnson or Cannon initiated their incriminating discussion. Under these circumstances alone, we might conclude that Cannon has waived any <u>Edwards</u> claim.

Rule 12(f), however, states that a court may grant relief from a waiver for cause shown. In this case, unusual circumstances lead the government to agree that the equities weigh against waiver. The government's response to Cannon's motion to suppress stated that "at no time subsequent to the Defendant receiving his '<u>Miranda</u>' rights . . . did he request an attorney or the assistance of counsel." Although Cannon's counsel might have discovered that this assertion was incorrect, the government concedes that its statement may have unwittingly misled counsel. Any confusion may have been aggravated when Cannon received new counsel after the hearing and before trial. Under these particular circumstances, we will not construe against Cannon his counsels' failure before trial to seek suppression of his oral statements on the basis of <u>Edwards</u>.

We note that the problems of this case demonstrate the importance of Rule 12 and its mandate that suppression matters be litigated before trial.

## B

If Johnson began interrogating Cannon after Cannon invoked his right to counsel, Johnson violated the prophylactic rule of Edwards v. Arizona, 451 U.S. 477, 101 S. Ct. 1880 (1981). Under Edwards, once an accused invokes the right to counsel, he is not subject to further interrogation until counsel is available to him. Id. at 484-85, 101 S. Ct. at 1885. The exception to this rule holds that the accused may be questioned if he initiates further communications with police. Id. at 485, 101 S. Ct. at 1885. Answers Cannon gave to questions after he invoked his right to counsel would be inadmissible unless (1) Cannon initiated further discussions with police and (2) Cannon knowingly and intelligently waived his right to counsel. Smith v. Illinois, 469 U.S. 91, 95, 105 S. Ct. 490, 493 (1984).

Cannon argues that neither requisite for admitting his statements has been satisfied. We agree that the first element has not been established, and do not reach the second. The ambiguous record does not demonstrate that Cannon initiated the discussion of drugs with Johnson. Once the topic turned to illegal conduct, Johnson interrogated Cannon. The government urges us to infer that Cannon initiated the conversation. See United States v. Reyes-Ruiz, 868 F.2d 698, 701 (5th Cir. 1989) (holding that facts not expressly found by trial court in evidentiary ruling may be

inferred from record to support ruling), overruled on other grounds, 934 F.2d 1349 (5th Cir. 1991). We do not find sufficient evidence in the record to warrant such an inference. The fact that Cannon had a motive to begin cooperating—he apparently hoped to benefit Green by doing so—does not alone lead to the conclusion that Cannon initiated the discussion.[1]

The government also argues that these facts do not present a violation of Edwards, as that holding is construed in this circuit. We disagree. The government correctly notes that in Plazinich v. Lynaugh, 843 F.2d 836 (5th Cir. 1988), cert. denied, 488 U.S. 1031 (1989), we stated that Edwards must be applied in a manner which recognizes that its principal concern was police badgering. Id. at 838-39; see also United States v. Duggan, 936 F.2d 181, 183 (5th Cir.), cert. denied, 112 S. Ct. 404 (1991). In Plazinich—where Edwards ultimately did not apply because the defendant initiated further communication with police—the alleged police impropriety occurred when an officer told the defendant that a codefendant had attempted suicide. 843 F.2d at 839. Rather than attempting to interrogate the defendant, police merely gave him information. While Plazinich did not involve conduct which raises concerns about police overreaching, this case does. If Cannon's contentions are true, he was questioned while in custody and after requesting a lawyer. The facts of Edwards demonstrate that the resumption of questioning about crimes, after a request for counsel and before an

---

[1]Moreover, the trial court made no ruling on the Edwards issue, so we have no indication that the court reached such an inference sub silentio.

attorney has been made available, constitutes overreaching. 451 U.S. at 484-85, 101 S. Ct. at 1885.

The government argues that even if Cannon's statements to Johnson were inadmissible under Edwards, his later reiteration of the statement to Land would be admissible. If so, Land's testimony would render the admission of Johnson's essentially identical evidence harmless error. The government's position overlooks that Cannon's statements to Land may have resulted from improper questioning by Johnson. If so, the second statement would be inadmissible under United States v. Webb, 755 F.2d 382 (5th Cir. 1985). In Webb, a suspect invoked his right to counsel before FBI agents took him to jail, where a jailer asked, "What kind of shit did you get yourself into?" The suspect responded by admitting to his son's murder. The jailer then asked the suspect if he would like to talk to the agents who arrested him. The suspect agreed and the agents returned, gave him Miranda warnings, and obtained a signed waiver of rights. Id. at 386. The resulting confession to the FBI was held inadmissible as a violation of Edwards. Id. at 390. Like the FBI agents in Webb, Land knew that Cannon had invoked his right to counsel. Webb shows that even if Land assumed that Cannon had initiated further communication, Cannon's statements to him were inadmissible if he was contacted as the result of an improper interrogation. Id. at 389.

8

C

The discovery of ephedrine at the ranch resulted from Cannon's disclosure of its location inside a tire. Cannon argues that if his statements to Johnson and Land were improperly obtained, the ephedrine would be inadmissible under the derivative evidence or "fruit of the poisonous tree" doctrine. See United States v. Namer, 835 F.2d 1084, 1087 (5th Cir.), cert. denied, 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 91988); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). This doctrine does not apply to the present case. Namer and Wong Sun involved Fourth Amendment violations. Cannon alleges that officers violated the prophylactic rule of Edwards. We have held that the derivative evidence doctrine is not triggered by an Edwards violation. United States v. Cherry, 794 F.2d 201, 208 (5th Cir. 1986); see also United States v. Tedford, 875 F.2d 446, 451 (5th Cir. 1989) (holding that doctrine applies only when actual constitutional violation occurs, and not violation of prophylactic rule); accord United States v. Bengivenga, 845 F.2d 593, 601 (5th Cir. 1988) (en banc). The district court did not err in allowing the admission of the ephedrine, regardless of the admissibility of Cannon's statements.[2]

D

"Determining who initiated the conversation after [the suspect] invoked his right to counsel is essential to a Fifth

---

[2]We need not rule on the government's contention that the ephedrine was admissible due to the inevitable discovery doctrine.

9

Amendment inquiry." Bradford v. Whitley, 953 F.2d 1008, 1010 (5th Cir.), cert. denied, 113 S. Ct. 91 (1992). In this case, that determination has not been made. Due to its unique circumstances, this case therefore must be remanded for fact findings necessary to resolve the Edwards issue. If the district court finds that Cannon did not initiate further communication with police, his statements must be ruled inadmissible.

The government argues that the admission of Cannon's statements, if erroneous, constitutes harmless error.[3] We test for harmless error by asking whether the trier of fact would have found the defendant guilty beyond a reasonable doubt with the contested evidence excluded. United States v. Gomez, 900 F.2d 43, 45 (5th Cir. 1990); United States v. Roberts, 887 F.2d 534, 536 (5th Cir. 1989). The indictment against Cannon includes charges that Cannon possessed ephedrine with the intent to manufacture methamphetamine, conspiracy to manufacture methamphetamine, and maintenance of a place for manufacturing methamphetamine. The physical evidence demonstrates the presence of ephedrine and small amounts of methamphetamine. Some items which could have been used to "cook" along with a partial methamphetamine recipe were discovered. On the other hand, the most probative evidence of these charges was Cannon's statements. Only those statements established that methamphetamine had been manufactured at the ranch on more than one

---

[3]A harmless error analysis may be performed to examine the effect of an Edwards violation. See, e.g., United States v. Webb, 755 F.2d 382, 392 (5th Cir. 1985); United States v. Wolf, 879 F.2d 1320, 1323 (6th Cir. 1989); cf. Arizona v. Fulminante, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

10

occasion.    Moreover, those statements alone demonstrated the involvement of persons other than Cannon and Green.  We are unable to say that the admission of Cannon's statements, if improper, was harmless beyond a reasonable doubt.

## III

Finally, we must address a separate point of error regarding the weapons charge alone.[4]    Cannon argues that there was insufficient evidence to convict him of the weapons charge.  The jury's verdict will be upheld if evidence, with all inferences reasonably drawn in favor of the government, could allow a rational trier of fact to find each element of the crime beyond a reasonable doubt.  United States v. Robles-Pantoja, 887 F.2d 1250, 1257 (5th Cir. 1989).  Moreover, because Cannon failed to reurge his motion for acquittal at the close of all evidence, our review is limited to determining whether there was a manifest miscarriage of justice, meaning that the record is devoid of evidence pointing to guilt. Id. at 1254; United States v. Ruiz, 860 F.2d 615, 617 (5th Cir. 1988).

Cannon asserts that having a .38 caliber pistol on his person does not show use of the weapon to facilitate the crime.  The government must establish some relationship between the firearm and the crime.  United States v. Wilson, 884 F.2d 174, 177 (5th Cir. 1989).  Cannon claims that no relationship was shown here, because his incriminating statements revealed methamphetamine manufacturing

---

[4]We must reach this point in the event that the district court finds Cannon's statements to have been admissible.

11

by others but not by himself. Conviction of this offense does not require that the defendant use, handle, or brandish the firearm in an aggressive manner. United States v. Molinar-Apodaca, 889 F.2d 1417, 1424 (5th Cir. 1989). A relationship to drug trafficking may be shown when the weapon was available to provide protection to the defendant in connection with his engagement in trafficking. Id. That relationship has been shown here, as Cannon was carrying the loaded pistol on his person at the manufacturing site. A similar result was reached in United States v. Raborn, 872 F.2d 589 (5th Cir. 1989), when the conviction of a defendant who had a pistol in his truck as he left a laboratory site containing precursor chemicals was upheld. Id. at 595. This claim lacks merit.

IV

We cannot say with certainty that the jury in this case would have found Cannon guilty beyond a reasonable doubt of these charges had his statements been excluded. We vacate the conviction and remand for a hearing to determine whether Cannon's statements may be admitted under Edwards v. Arizona. If the district court finds either that Cannon did not initiate further communication or did not waive his right to counsel as required by Edwards and Smith v. Illinois, then it shall grant defendant a new trial. If the district court finds that Cannon initiated the communication and waived his right to counsel the judgment of conviction will be reinstated. Cf. United States v. Gomez, 900 F.2d 43, 45 (5th Cir. 1990) (reversing and remanding for determination of consent to telephone interception).

12

VACATED and REMANDED.