

**NUMBER 13-07-035-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**MARSHALL ANTHONY SMITH,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the 1st District Court of Newton County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Wittig[1]**
**Memorandum Opinion by Justice Wittig**

Marshall Anthony Smith, appellant, was convicted by a jury of the offense of injury

to a child. *See* TEX. PENAL CODE ANN § 22.04 (Vernon 2006). The jury assessed

punishment at seventy years confinement and a $10,000.00 fine. In five issues, appellant

---

[1] Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. TEX. GOV'T CODE ANN. § 74.003 (Vernon 2005).

complains the evidence is not sufficient to sustain descriptive allegations in the indictment, the erroneous admission of DNA testing, the admission of inflammatory and prejudicial photos of the child, admission of a custodial statement and ineffective assistance of counsel.[2]  We will affirm.

## 1. Variance:  Descriptive Allegations

Appellant argues that the State is bound by its allegations in the indictment and must prove them beyond a reasonable doubt, citing *Moore v. State*, 531 S.W.2d 140, 142 (Tex. Crim. App. 1976) (State is bound by its allegations in the indictment and must prove them beyond a reasonable doubt) (citing *Butler v. State*, 429 S.W.2d 497 (Tex. Crim. App. 1968)); *Seiffert v. State*, 501 S.W.2d 124 (Tex. Crim. App. 1973).  In *Moore*, the State was bound to prove beyond a reasonable doubt that the appellants robbed the complainant Shaw with a pistol.  *See id.* Therefore, proof of robbery with a sawed-off shotgun did not meet that burden.  *Id.*  In this case, appellant was charged with intentionally or knowingly causing serious bodily injury to "AP", a child younger than 15, by burning him with hot grease.[3]  Appellant contends the evidence was legally insufficient to prove the burn injuries were caused by hot grease.

Deputy Duncan testified to finding a large brown stain on the floor which appeared to be coffee.  Also present was a broken coffee pot.  Below the refrigerator was what appeared to be cooled grease.  A frying pan was in the sink with a mixture of water and grease.  Duncan poured the pan down the sink and found what he thought was human

---

[2] The issues of law in this case are settled, and the parties are familiar with the background facts. Accordingly we will not recite matters not material to our decision.  *See* TEX. R. APP. P. 47.4.

[3] We identify the minor child as AP.

2

skin. A pair of children's shorts appeared to have grease stains on them which were not tested. The apparent grease on the floor was not collected or tested. A pair of adult jeans also appeared to have grease or oil stains but again was not tested.

Forensic scientist Henson testified to receiving and analyzing two pieces of skin, one from the frying pan and another piece from the bathroom floor. A partial DNA profile of the skin sample found in the frying pan was found to be consistent with the DNA of AP. A second skin sample from the pan was not tested. Henson further opined that the skin sample from the bathroom floor was that of AP, to a reasonable degree of scientific certainty. She was not able to state that AP was the source of the other pan sample tested to a reasonable degree of scientific certainty. Henson did not opine as to what caused the skin to burn or the type of substance that might have been on the skin.

Dr. Lukefahr, in a medical consulting report, wrote his impression : "child physical abuse consisting of multiple contusions to head and body and immersion grease burns to feet." On cross examination, he admitted his basis for concluding the burn was grease induced was based on what he learned from CPS and law enforcement. He further admitted, that based upon the appearance of the burn, he could not identify the nature of the liquid causing the burn.

Appellant admits that his testimony at trial differed from his pre-trial statements but they involved coffee and a broken coffee pot. This was corroborated by appellant's mother and the testimony of Deputy Duncan.

The State counters that the *Moore* and *Butler* line of cases have been supplanted by the *Fuller case. Fuller v. State*, 73 S.W.3d 250, 252-253 (Tex. Crim. App. 2002). Before *Fuller*, the problem with a variance between an indictment and proof was fully

3

discussed in *Gollihar v. State,* 46 S.W.3d 243, 246 (Tex. Crim. App. 2001) ("variance"

occurs when there is a discrepancy between the allegations in the charging instrument and

the proof at trial; in a variance situation, the State has proven the defendant guilty of a

crime, but has proven its commission in a manner that varies from the allegations in the

charging instrument) (citing 42 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE,

CRIMINAL PRACTICE AND PROCEDURE § 31.81 at 178 (1995)).  In *Gollihar*, the court reaffirmed

the fatal variance doctrine and adopted the materiality test.  *Id.* at 257.

More recently in *Grotti,* the court reiterated the test for legal sufficiency found in

*Malik.  Grotti v. State*, No. PD-134-07, 2008 Tex. Crim. App. LEXIS 761, *15-16 (Tex. Crim.

App. Jun. 25, 2008) (citing *Malik v. State*, 953 S.W.2d 234, 236-40 (Tex. Crim. App. 1997).

The *Grotti* court wrote:

> In *Malik*, we held that legal sufficiency of the evidence would no longer be
> measured by the jury charge actually given, but that it would instead be
> measured by the elements of the offense as defined by the hypothetically
> correct jury charge for the case. *Malik v. State*, 953 S.W.2d at 234. *Malik*
> also held that, when assessing the legal sufficiency of evidence on appeal,
> the appellate court should measure elements of the offense as defined in a
> hypothetically correct jury charge for the case. *Id.* at 240.

*Id.*

The *Gollihar* court summed up, holding that when faced with a sufficiency of the

evidence claim based upon a variance between the indictment and the proof, only a

"material" variance will render the evidence insufficient. *Gollihar*, 46 S.W.3d at 257.  "Thus,

the hypothetically correct charge will take into consideration the fatal variance doctrine

formerly expressed by this Court and today reaffirmed."  *Id.*  Allegations giving rise to

immaterial variances may be disregarded in the hypothetically correct charge, but

allegations giving rise to material variances must be included.  *Id.*   Thus, we inquire

4

whether the indictment's allegation of "hot grease" as opposed to hot coffee or other scalding liquid is material.

Appellant argues there was evidence of spilled coffee and a broken pot. He would have us hold that evidence of intentional injury caused by hot grease is insufficient. The State argues, and we agree, that the means or weapon used to cause the serious injury does not constitute a material variance. This is so because the means, or grease, is not a substantive statutory element of the offense of injury to a child. Section 22.04 requires an intentional, knowing, reckless by omission or with criminal negligence, causing a child: (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury. TEX. PENAL CODE ANN. § 22.04. The instrumentality used in the commission of this crime is not an element. *Flenteroy v. State*, 187 S.W.3d 406, 411 (Tex. Crim. App. 2005) (appellant's defense did not depend on whether any particular type of weapon was used; variance between the indictment's allegation of a "screwdriver" and the State's proof at trial of "a hard metal-like object" was, therefore, immaterial).

The State was required to prove that appellant intentionally or knowingly caused serious bodily injury to a child. Appellant's defense essentially was not that he didn't burn the child but that his conduct was not intentional or knowing. *See id.* There is no indication in the record that appellant did not know he was accused of intentionally injuring the child or that he was surprised by the proof at trial. *See Gollihar*, 46 S.W.3d at 257. Finally, the variance does not subject appellant to another prosecution for the same offense. *Fuller*, 73 S.W.3d at 254 (appellant's defense did not depend on whether any particular type of weapon was used). We hold that the variance, if any, is immaterial and, therefore, the evidence is not legally insufficient. *See Gollihar*, 46 S.W.3d at 257 n. 2. The same

5

rationale applies whether considering legal sufficiency or factual sufficiency. *Fuller*, 73 S.W.3d at 254 (under *Malik* evidentiary sufficiency should be measured against the "elements of the offense as defined by the hypothetically correct jury charge for the case" in all sufficiency cases).

The State also argues that the evidence was sufficient to permit the jury to find appellant burned the child's feet with hot grease. We agree. Appellant's version that he accidentally burned the child with hot water or that the child spilled hot coffee is inconsistent with the stocking pattern of the child's third degree burns on his feet. The horrific burns patently caused the child's skin to peel away, and skin found in the bathroom belonged to the child. Furthermore, the child's mother testified to the child's later outcry that [he] "made me stand in it. It was hot. Ooh, hot." Circumstantial evidence alone is sufficient to establish guilt. *Martinez v. State*, 198 S.W.3d 36, 50 (Tex. App.–Corpus Christi 2006, no pet.) Here the testimony about the grease pan in the sink, grease on the floor and clothing, human skin found in the pan and the bathroom and the stocking burn pattern all support the jury's finding. We overrule appellant's first issue.

### 2. Expert Testimony

In his second issue, appellant asserts the trial court erred in admitting opinion testimony concerning a DNA test without a proper predicate. The trial objection stated the expert Henson was qualified to give the opinion but that she could not give the opinion within a reasonable degree of scientific certainty. The witness testified that the skin sample from the bathroom matched the DNA of the victim, but the sample from the frying pan could not exclude the victim. The probability of another Caucasian match was 1 in 3,203. Appellant made the same objection when the expert's lab findings were introduced. The

6

trial court overruled both objections.

Appellant cites *Sexton v. State*, 93 S.W.3d 96, 99-100 (Tex. Crim. App. 2002). According to appellant's argument, the State did not meet the *Sexton* test that requires the proponent of the evidence to show that: (1) the underlying scientific theory is valid, (2) the technique applying the theory is valid, and (3) the technique was properly applied on the occasion in question. *Id.* at 100 (citing *Kelly v. State*, 824 S.W.2d 561, 573 (Tex. Crim. App. 1992).

We review a trial court's decision to admit or exclude scientific expert testimony under an abuse of discretion standard. *Id.* If the trial court's ruling is within the zone of reasonable disagreement, then the trial court's ruling will be upheld. *Id.*; *Kelly*, 824 S.W.2d at 574. Rule of Evidence 702 dictates, "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. The rule places the trial court as a gatekeeper and determiner as to whether the proffered scientific evidence is sufficiently reliable and relevant to aid the jury. *Jackson v. State*, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000); *Kelly*, 824 S.W.2d at 573. The proponent of the scientific evidence must demonstrate through clear and convincing evidence that the evidence is in fact reliable. *Jackson,* 17 S.W.3d at 670; *Kelly*, 824 S.W.2d at 573.

In order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. *Porter v. Whitehall Lab.*, 9 F. 3d 607, 613 (7th Cir.

7

1993).[4] We will not disturb the trial court's decision to admit scientific evidence absent an abuse of discretion. *See Griffith v. State*, 983 S.W.2d 282, 287 (Tex. Crim. App. 1998).

Neither at trial nor in his brief does appellant point out where the State's proof failed to show the DNA evidence was unreliable or irrelevant. Nor does appellant state how the expert testimony did not show: 1) the underlying scientific theory to be valid, (2) the technique applying the theory was valid, and (3) the technique was properly applied on the occasion in question. *See Kelly*, 824 S.W. 2d at 573. The expert stated her conclusion that the skin from the bathroom was that of AP to a reasonable degree of scientific certainty. Concerning the frying pan sample, she indicated that the skin was human and that AP could not be excluded. The probability that another Caucasian skin would match the pan sample was only 1 in 3,203, 1 in 7,283 for a Black and 1 in 18,250 for a Hispanic. The scientific methodology used for both skin samples was the same. The expert, however, was only able to obtain a partial DNA profile from the pan skin. Because she was only able to obtain 4 matching loci on the pan skin sample, she could not testify to a reasonable degree of scientific certainty that the pan sample actually matched AP.[5] She could determine and did testify only that AP could not be excluded and the skin was consistent with that of AP.

The State argues, and we agree, that the admission of the expert's testimony on the pan sample was neither unreliable nor irrelevant. The expert duly limited her testimony

---

[4] *Porter* is also cited by appellant for the proposition that scientific evidence that falls below the standard of a reasonable degree of scientific certainty is not well grounded in the scientific method. We agree in principle.

[5] The Texas DPS standard for "reasonable scientific certainty" according to the expert would require 13 of 15 loci matches. For a more thorough discussion of this matter, see *Harvey v. Horan*, 285 F.3d 298, 305 N. 1 (4th Cir. 2002) ( Luttig, Circuit Judge, concurring),

concerning the pan sample to show it was human skin, consistent with AP's skin, and that AP could not be excluded as the donor. The question raised by appellant concerns more the weight of the testimony rather that its reliability. Henson did not testify the skin belonged to AP as appellant identified in his trial objection.

Even if we were to assume error in the expert's report and the testimony concerning the human tissue found in the frying pan, our examination of the record in its entirety leads us to conclude that the alleged error did not affect a substantial right of the appellant. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. U.S.*, 328 U.S. 750, 776, (1946)). In light of the properly admitted evidence of the expert's opinion and report that the bathroom skin tissue belonged to AP, taken with the testimony of Duncan, the unobjected to photos of the burns, and also the outcry testimony reported by AP's mother, we find that the complained of opinion in this case did not have a substantial or injurious influence on the jury's decision. This is particularly true when there is absolutely no suggestion that the expert's opinion was manufactured or untrue and where appellant himself admitted that AP's skin peeled away and dropped in the house. We overrule this issue.

### 3. Photos

Appellant next argues that the trial court erred by admitting inflammatory and prejudicial photos. The admissibility of photographs over a challenge is within the sound discretion of the trial court. *Rojas v. State*, 986 S.W.2d 241, 249 (Tex. Crim. App. 1998); *Montgomery v. State*, 810 S.W.2d 372, 378-80 (Tex. Crim. App. 1990) (op. on rehr'g). The trial court's decision will be reversed only if it was "outside the zone of reasonable

disagreement." *Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex. Crim. App. 1992); *Montgomery* , 810 S.W.2d at 380. Rule 403 provides that, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. The following four-pronged test is utilized in reviewing a trial court's evidentiary ruling under rule 403: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004); *Montgomery*, 810 S.W.2d at 389-90. For the admission of photographs, we also consider the following factors: (1) the number of photographs; (2) their size; (3) whether they are in color or black and white; (4) whether they are gruesome; (5) whether the body depicted is clothed or naked; and (6) whether the body has been altered by autopsy. *Erazo*, 144 S.W.3d at 489.

This court has held that a photograph should add something that is relevant, legitimate, and logical to the testimony that accompanies it and that it should assist the jury in its decision-making duties. *Denoso v. State*, 156 S.W.3d 166, 177 (Tex. App.–Corpus Christi 2005, pet. denied). Sometimes this may, incidentally, include elements that are emotional and prejudicial. However, if there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects. *Id.*

The trial objections to the photos were that bruises and contusions other than to the burned feet were offered. Trial counsel further objected the photos were inflammatory and

10

that their prejudicial effect outweighed any probative value. The only discernable citation to authority by appellant is to *Erazo*. *See Erazo v. State*, 167 S.W.3d 889, 890 (Tex. App.– Houston [14th Dist.] 2005, pet. denied). In the *Erazo* remand, the court found harmful error for the admission of an autopsy photograph of the deceased complainant's dead fetus when there were no charges pertaining to the fetus. The only charges pertained to the deceased mother who was not even pictured in the objectionable photo. *Id.*

Deputy Duncan testified to his initial observations of AP in the ER before being life-flighted to the burn center in Galveston. The boy had a large knot on the left side of his head and blood coming out of his nose. The child was "real, real scared looking." Some of the few truly graphic photos showed these same injuries to the child. These photos were clearly relevant and needed by the State to rebut appellant's statements denying causing any other injuries to the child and appellant's claim of accidental injury. TEX R. EVID. 401. Other mild and sanguine pictures showed multiple bruises of varying ages to the child. These photos were also relevant to show injuries appellant claimed were caused by the child playing with older siblings. *Id.* The complained of photos are hardly inflammatory, particularly when contrasted with the unobjected to photos of the child's burned feet. Dr. Lukefahr explained the bandages to the child's head were caused by the grafts necessary to treat the severe burns to the feet. Other witnesses used many of the photos to explain their testimony.

Where pictorial evidence will help the jury to understand verbal testimony, such as the technical language used by a medical doctor in describing the injuries sustained by a victim of a crime, the photograph is generally admissible. *Harris v. State*, 661 S.W.2d 106, 107 (Tex. Crim. App. 1983). Photographs that depict the nature, location, and extent of

11

a wound have been found to be probative enough to outweigh any prejudicial effect. *Legate v. State,* 52 S.W.3d 797, 807 (Tex. App.–San Antonio 2001, pet. ref'd). Overall, the photograph must be helpful to the jury; "if there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects." *Erazo*, 144 S.W.3d at 491-92. We hold that the trial judge could have reasonably found that the photos in question were helpful to the jury and that the emotional and prejudicial aspects, if any, did not substantially outweigh the helpful aspects.[6] *See id.* We overrule this issue.

### 4. Statement

In his forth issue, appellant argues that his audio-taped statement given to district attorney investigator Amburn. did not meet the test set out in *Cross. See Cross v. State*, 144 S.W.3d 521, 526-527 (Tex. Crim. App. 2004). Before trial, appellant, in open court, requested the trial court to dismiss his attorney. The judge and district attorney both duly admonished appellant against proceeding without an attorney. Appellant insisted that he did not want an attorney and that he wanted to deal directly with the district attorney's office. According to Amburn's testimony, later that day he went out to the prison as a representative of the district attorney's office and recorded a statement from appellant. Before taking his statement, appellant was again advised of his constitutional rights. State's exhibit 2 was also introduced and it recited appellant's rights and was signed by appellant.

*Cross* discusses *Oregon v. Bradshaw*, 462 U.S. 1039, 1044, (plurality op.). In

---

[6] While we note that the sheer number of photos appear excessive, we cannot say that factor standing alone rendered their admission outside the zone of reasonable disagreement.

12

*Oregon*, the Supreme Court clarified the *Edwards*[7] rule and established a two-step procedure to determine whether a suspect has waived his previously invoked right to counsel. *Id.* The first step requires proof that the suspect himself initiates further communication with the authorities after invoking the right to counsel. *Id.* The second step requires proof that, after he reinitiates communication with the authorities, the suspect validly waives the right to counsel. *Id.* Once this two-step waiver requirement is shown, the suspect has countermanded his original election to speak to authorities only with the assistance of counsel. *Id.* Once this is done, the *Edwards* rule is fully satisfied. *Id.*

While appellant contends that somehow he did not initiate contact with the district attorney's office, the record proof indicated that appellant in open court requested to visit with someone from the district attorney's office. Based upon that request, Amburn visited appellant the same day. The taped session also reiterates appellant's desire to speak with Amburn (someone from the district attorney's office). Appellant also argues that he did not validly waive his right to counsel. Again, the record does not support this contention. The tape itself also shows valid warnings to appellant, including his right to counsel. Additionally, the record indicates the trial judge and the district attorney amply warned appellant. Appellant somehow contends that he may have been influenced by other factors such as lack of sleep, promised benefits, mental health issues, or undocumented coercion. The record does not support these assertions.

First, we note, no such objections were made to the trial court and were thus waived. *Fuller v. State*, 827 S.W.2d 919, 929 (Tex. Crim App. 1992). Furthermore, the

---

[7] *Edwards v. Arizona,* 451 U.S. 477, (U.S. 1981).

13

*Cross* court pointed out that the cases following *Edwards* are clearly indicative that in the absence of some police interference with the exercise of the right to counsel of the accused, the *Edwards* rule is to be strictly and narrowly applied. *Id.* (citing *Plazinich v. Lynaugh*, 843 F.2d 836, 838-39 (5th Cir. 1988)). The record, including the tape itself, does not support appellant's allegations. We overrule appellant's issue.

### 5. Ineffective Assistance

Finally, appellant contends that his trial counsel rendered ineffective assistance to him at the trial level. Specifically, he argues that trial counsel failed to file a notice of intent to raise the insanity defense. Next, he avers counsel failed to properly object to the introduction of his tape-recorded statement discussed above. Further, his counsel failed to request a hearing on the voluntariness of his taped statement.

Appellant concedes that in most cases the preferable method of raising this issue is though a *habeas corpus* proceeding, citing *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997) (citing *Ex Parte Duffy*, 607 S.W.2d 507, 512-513 (Tex. Crim. App. 1980) (in most instances, the record on direct appeal is inadequate to develop an ineffective assistance claim). But, he argues, sometimes the existing record possibly demonstrates a single egregious error or omission that will constitute ineffective assistance, citing *Jackson v. State*, 766 S.W.2d 504, 510-511 (Tex. Crim. App. 1985) (citing *Nero v. Blackburn*, 597 F.2d 991, 994 (5th Cir. 1979) ("Sometimes a single error is so substantial that it alone causes the attorney's assistance to fall below the sixth amendment standard.")).

In reviewing claims of ineffective assistance of counsel, we apply the two-prong *Strickland* test to determine whether assistance of counsel was so defective as to require

14

reversal of the defendant's conviction. *Strickland v. Washington*, 466 U.S. 668, 687(1984); *see Hernandez v. State*, 988 S.W.2d 770-72 (Tex. Crim. App. 1999). To establish ineffective assistance of counsel under the *Strickland* test, appellant must prove by a preponderance of the evidence that (1) his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland*, 466 U.S. at 687-94. Stated otherwise, "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88.

The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Mata v. State*, 226 S.W.3d 425, 428 (Tex. Crim. App. 2007). In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. *Id.* At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 695. Furthermore, allegations of ineffective assistance of counsel must be firmly founded in the record, with the record affirmatively demonstrating the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

On direct appeal, a reviewing court indulges a strong presumption that counsel's

15

conduct fell within the wide range of reasonable professional assistance. *Id.* at 813-14. If there is at least the possibility that the conduct could have been legitimate trial strategy, the reviewing court must defer to counsel's decision and deny relief on an ineffective assistance of counsel claim on direct appeal. *Id.*

Was counsel ineffective because he did not timely file a notice of intent to raise the insanity defense? The record reflects only that counsel filed his notice on November 9, 2006, claiming that good cause existed for not filing the notice at least 20 days prior to the date the case was set for trial. The trial judge denied the motion/notice on November 13, 2006 noting "Above Denied after hearing." Appellant contends he was therefore denied his right to raise an important defense.

It is not possible to determine whether counsel's actions fell outside the range of effective assistance of counsel. First, appellant's claim is not firmly grounded in the record. *Thompson*, 9 S.W.3d at 813. There is little evidence that appellant was suffering from any mental impairment sufficient to raise an insanity defense. Appellant did complain of "day mares," that he could not recall some conduct, or that he had no control. However, the record does not reflect trial counsel's strategy or preparation. With his client incarcerated, did counsel decide to proceed to trial to avoid the attendant delays and probable outcome of such a defense assuming that there might have been any evidence of insanity? Did counsel have his client examined by a psychiatrist or psychologist? What, if anything did the expert opine? Did appellant himself demand such a defense, waiting until the last minute? Secondly, on direct appeal, a reviewing court indulges a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Thompson* 9 S.W.3d at 813-14. Thus, appellant fails to demonstrate by a preponderance

16

of the evidence that the first prong of the *Strickland* test has been met.

Next, was counsel's objection to the introduction of the taped statement deficient? Appellant contends that counsel didn't object on the basis of Article 38.22 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 38.22 § 3(a)(2) (Vernon 2005) (requiring for admission that during the recording that warnings be given and the accused voluntarily waive his rights). The tape recording itself demonstrates that the required warnings were given. Appellant signed off on a warning document introduced into evidence at the trial. The tape itself also demonstrates appellant's eagerness and willingness to speak with Amburn. Appellant candidly admits he did not review the very tape recording he now attacks as deficient. Again, the record does not support appellant's allegation.

Finally, appellant contends counsel was deficient by failing to request a hearing on the voluntariness of the recorded statement. Once this issue is raised, if requested, the trial court was obligated to hold a hearing outside the presence of the jury to determine if the waiver of rights was voluntary or not. *See Jackson v. Denno*, 378 U.S. 368, 394 (U.S. 1964) (providing for an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession); *see also Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995) (once a defendant moves to suppress a statement on the ground of "involuntariness," the due process guarantee requires the trial court to hold a hearing on the admissibility of the statement outside the presence of the jury).

As discussed above, we cannot read the mind of trial counsel. Trial counsel had the advantage of both speaking with his client, reviewing the tape itself, which on its face was voluntary, and was presumably very aware of the facts and circumstances surrounding

17

the alleged voluntariness issue.  Counsel may well have been aware or concluded that the statement was not  "involuntary," for the purposes of federal due process, because there was no official, coercive conduct, and the statement was essentially the free and unconstrained choice by its maker.  *See Alvarado v. State,* 853 S.W.2d 17,  19, n.4 (Tex. Crim. App. 1993) ; *Smith v. State*, 779 S.W.2d 417, 427 (Tex. Crim. App. 1989).  On direct appeal, a reviewing court indulges a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Thompson,* 9 S.W.3d at 813-14. Thus, appellant fails to demonstrate by a preponderance of the evidence that the first prong of the *Strickland* test has been met.  We overrule this issue.

The judgment and sentence of the trial court is affirmed.


DON WITTIG,
Justice


Do Not Publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this the 22nd day of January, 2009.