*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0182p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

          *Plaintiff-Appellee,*

    *v.*

DONYELL D. COX,

          *Defendant-Appellant.*

No. 07-3886

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 05-00150—Thomas M. Rose, District Judge.

Argued: January 23, 2009

Decided and Filed: May 21, 2009

Before: SUHRHEINRICH, GRIFFIN, and KETHLEDGE, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Andrew P. Avellano, Columbus, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Andrew P. Avellano, Columbus, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, Dwight K. Keller, ASSISTANT UNITED STATES ATTORNEY, Dayton, Ohio, for Appellee.

———————————

**OPINION**

———————————

    KETHLEDGE, Circuit Judge. Donyell Cox appeals his conviction and sentence for conspiracy to distribute more than five kilograms of cocaine. We affirm his conviction, but vacate his sentence and remand for resentencing.

1

I.

Cox was arrested for his role in collecting $42,000 owed to Larry Beasley for the sale of two kilograms of cocaine. Testimony at Cox's trial established that Beasley had been responsible for the distribution of approximately seven kilograms of cocaine during the 10 months preceding the arrest.

Beasley's girlfriend, Sheila Norvell, sold drugs for him. The relevant sale here was for two kilograms. Norvell was slow in delivering to Beasley the proceeds of the sale—because she had in fact kept the money herself, and fabricated a story that the drugs were stolen—so Beasley sent Cox to collect the money. Cox met Norvell around 8:00 p.m. on September 28, 2005, in the parking lot of the Dayton Mall. By that time, Norvell was working with the DEA, who had staked out the meeting place. Norvell was wearing a wire, and agreed to signal the agents to move in for an arrest by opening the trunk of her car.

Cox drove up, alone, in Beasley's Chrysler 300M. Norvell had met Cox on two occasions, but did not know him well, and was upset to see him instead of Beasley. When Cox got into Norvell's car, she asked him why Beasley had not come himself to collect the debt. Cox replied that everything would "be okay." Norvell then told Cox to call Beasley so that she could talk to him. Cox did so—he had already exchanged numerous calls with Beasley that day—and handed her the phone. During Norvell's call with Beasley, she stepped out of the car and opened its trunk. Cox got out of the car as well, but took only a single step before being arrested.

Cox and Beasley were together charged with one count of conspiracy to distribute (or to possess with intent to distribute) more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846. The district court severed Cox's case from Beasley's, and, with Cox's consent, commenced a bench trial on December 5, 2005. The court found Cox guilty of the charged offense, and sentenced him to 240 months in prison, which the court understood to be the statutory minimum.

This appeal followed.

II.

A.

Cox first argues that there was insufficient evidence to convict him of the conspiracy. "To sustain a conviction for drug conspiracy under section 846, the government must prove beyond a reasonable doubt: (1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). "The existence of a conspiracy 'may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan.'" *Id*. We view the evidence supporting Cox's conviction in the light most favorable to the prosecution, and decide whether *any* rational trier of fact could view the evidence as establishing each element of the charge beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

Here, the government produced ample evidence regarding Cox's agreement to collect a drug debt. As an initial matter, Norvell testified that, on September 28, 2005, Beasley told her that Cox would be coming to pick up the money for the two kilograms of cocaine. Uncontroverted testimony, as well as audio and video evidence, establish that Cox did exactly that. Cox arrived at the meeting place in Beasley's car, was calm in response to Norvell's questions about why he rather than Beasley had shown up to pick up the money, and assured her that "it would be okay." He called Beasley from inside Norvell's car, at her request. Beasley also attempted to call Cox five times shortly after Cox's arrest. This record is more than sufficient to sustain Cox's conviction.

Cox also argues that he withdrew from the conspiracy prior to his arrest. But even if we gave Cox the benefit of the doubt and interpreted his step towards the front of Norvell's car as abandoning the conspiracy (a generous inference), that act constitutes a "mere cessation of his activity" and not the "affirmative action to defeat or disavow the purpose of the conspiracy" necessary to establish the affirmative defense of withdrawal. *See United States v. Lash*, 937 F.2d 1077, 1083 (6th Cir. 1991) (holding that a defendant asserting the withdrawal defense bears the burden of proving that he "took affirmative action to defeat or disavow the purpose of the conspiracy" and that "[m]ere cessation of activity is not sufficient"). We therefore affirm Cox's conviction.

B.

We next turn to Cox's sentence.  Cox argues that he should have been sentenced based upon only two kilograms of cocaine, rather than five.  Because Cox did not object to his sentence below, we review it for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (*en banc*).  A plain error is one that is "clear or obvious," and "affects [a defendant's] substantial rights[.]" *Id*.

Before sentencing Cox, the district court found that Cox's "known offense conduct" involved not five, but two kilograms of cocaine.  Accordingly, "for the purposes of the [sentencing] guidelines," the court found "that Mr. Cox [is] only held accountable for 2 kilograms of cocaine." *Id*.  That amount would yield a guidelines range of 97-121 months for Cox's sentence.

But the district court believed it was constrained to sentence Cox according to the five kilograms of cocaine specified in the indictment—which would trigger a mandatory-minimum sentence of 240 months—rather than the two kilograms for which the court thought Cox responsible.  The court stated:

> I think I could state that in my opinion that [sic] possibly advisory guidelines range in this case, taking into consideration the other factors, as far as I'm concerned would be the more realistic of [sic] the sentence.  But that is not what the Court is dealing with.  The Court is dealing here with a mandatory minimum sentence of 240 months.  And even though the Court would tend to agree with the advisory range and believes that the other factors would equate to such an advisory range, the Court is bound by Statute[.]

The court was not so constrained.  Subject to one caveat, discussed below, the settled law of this circuit is that, "in regard to 21 U.S.C. § 841, section (a) describes the substantive offense, and section (b), imposing mandatory minimum sentences based on the quantity of drugs involved, is a penalty provision only and does not constitute an element of the offense to be determined by the [finder of fact]." *United States v. Jinadu*, 98 F.3d 239, 247 (6th Cir. 1996).  Our rule, therefore, is that "it is unnecessary for the government to allege drug quantity in an indictment, *and even when the government does so*, the quantity alleged 'does not dictate the mandatory minimum that the court is required to impose.'" *Id*. at 248 (quoting *United States v. Reyes*, 40 F.3d 1148, 1151 (10th Cir. 1994)) (emphasis added).  Thus, in this case, as in *Jinadu*, "[t]he district court erred in determining that the amount of

drugs charged in the indictment controlled in regard to the imposition of a mandatory minimum sentence under these statutes." 98 F.3d at 247.

This case presents even stronger grounds for vacating the defendant's sentence than did *Jinadu*. There, the district court failed to make *any* "determination of the quantity of drugs involved at sentencing[,]" *id.* at 249, erroneously believing itself bound by the amount charged in the indictment. Here, in contrast, the court affirmatively found that Cox was responsible for less than the charged amount. In that respect, this case resembles *United States v. Winston*, 37 F.3d 235, 241 (6th Cir. 1994), in which the district court found that the subject conspiracy involved only 23 grams of cocaine base, rather than the 50 grams charged in the indictment. There the court made the same mistake as the district courts in this case and *Jinadu*, and thus sentenced Winston according to the indictment amount. We held that, "despite the language in the indictment describing an amount of cocaine base 'in excess of 50 grams,' the amount of drugs that the court determined to be involved in the conspiracy was insufficient to justify the imposition of an enhanced sentence pursuant to 21 U.S.C. § 841(b)(1)(A)." *Id.*

The caveat to all this is that, if a certain drug quantity would "increase[]the penalty for a crime *beyond the prescribed statutory maximum*[,]" the question whether the defendant is responsible for that amount "must be submitted to [the trier of fact], and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (emphasis added). The government impliedly contends that a fact so found is binding upon the district court for purposes of sentencing. And thus, the government concludes, *Apprendi* renders *Jinadu* "inapposite" here.

But the government has skipped a step. Whatever the merits of its implicit contention—and we do not reach them today—its conclusion is valid only if *Apprendi* itself applied to the drug quantity alleged in the indictment. And *Apprendi* does *not* apply where a fact "increases a defendant's mandatory *minimum* sentence but does not increase the *maximum* statutory range." *United States v. Copeland*, 321 F.3d 582, 602 (6th Cir. 2003) (emphasis added).

That is precisely the effect of the five-kilogram drug quantity here. Consequently, it is *Apprendi* itself, and not *Jinadu*, that is inapposite to this case. The drug quantity alleged

in the indictment was no more an element of the offense of conviction here than it was in *Jinadu* and *Winston.* And thus, per our clear holdings in those cases, the district court was free to sentence Cox according to the drug quantity for which the court thought Cox actually responsible, rather than the amount charged in the indictment.

"Contrary to the district court's belief," therefore, "the indictment does not control." *Jinadu*, 98 F.3d at 249. Under our precedents, that error was plain. The error also affected Cox's substantial rights, since it likely increased his sentence by at least 10 years. We thus vacate his sentence and remand for resentencing. Having done so, Cox's additional claim that he received ineffective assistance of counsel with respect to his sentence is moot.

For these reasons, we affirm Cox's conviction, but vacate his sentence and remand the case for resentencing consistent with this opinion.