RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0073p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

OSCAR MONTES,

        *Petitioner-Appellant,*

    *v.*

JAN TROMBLEY, Warden,

        *Respondent-Appellee.*

No. 08-2521

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 06-14539—Thomas L. Ludington, District Judge.

Submitted: March 10, 2010

Decided and Filed: March 17, 2010

Before: DAUGHTREY, GILMAN, and KETHLEDGE, Circuit Judges.

—————————————

**COUNSEL**

**ON BRIEF:** Laura Kathleen Sutton, LAW OFFICE, Manchester, Michigan, for Appellant. Laura Graves Moody, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

—————————————

**OPINION**

—————————————

RONALD LEE GILMAN, Circuit Judge. A Michigan jury found Oscar Montes guilty of kidnapping. He was sentenced to a term of 30 to 60 years of imprisonment. After a series of appeals and remands in the Michigan state-court system, Montes's conviction and sentence were affirmed. Montes then filed a petition for a writ of habeas corpus in federal court, arguing, among other things, that his sentence exceeded the "statutory maximum" and therefore violated the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution.

1

The district court denied his petition.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

The following factual background, as set forth by the Michigan Court of Appeals, is undisputed for the purposes of this appeal:

> On April 13, 1999, the four-year old victim and her nine-year-old sister walked from their home in Detroit to the corner store, approximately three houses away.  As the girls entered the store, the victim's sister saw [Montes] turn his truck around on McGraw Street and drive toward the store. As the girls walked out of the store, [Montes] approached the girls on foot and offered the victim some chewing gum.  [Montes] then grabbed the victim's sister, who kicked and fought until she escaped [Montes's] grip. However, [Montes] was able to grab the victim and put her into the front seat of the truck, through the driver's side door.  [Montes] then entered the truck and sped away as the victim stood up and began scratching and hitting the back window of the truck.

> Ramon and Esther Hernandez were driving past the store as the incident occurred and saw [Montes] grab the victim and put her in his truck. They followed [Montes's] truck as he tried to drive towards the freeway, and were able to pursue him as he then drove at high speeds through a red light at Michigan Avenue and toward a truck yard on John Kronk Street.  Esther Hernandez testified that the victim was screaming and crying inside the truck.  During the pursuit, the Hernandez' saw a police car and Ramon Hernandez beeped his car horn and Esther Hernandez began screaming to get the officer's attention.  Esther Hernandez told the officer that [] the driver of the truck in front of them had kidnapped a young girl.  The officer pulled up beside the truck and saw the victim crying through the passenger window.  At first, [Montes] ignored the officer's flashers and gestures to pull over. However, [Montes] eventually pulled into a gas station and, thereafter, was placed under arrest.  When police searched defendant, they noticed that the zipper of his pants was open and that he was carrying candy, gum, and climax control lotion.  [Montes] testified that he picked up the victim merely to help her find her mother.

*People v. Montes*, No. 223539, 2002 WL 484613, at *1 (Mich. Ct. App. Mar. 22, 2002), *vacated and remanded on a state-law sentencing issue*, No. 121502, 673 N.W.2d 104 (Mich. Oct. 3, 2003) (unpublished table decision).

The State charged Montes with one count of kidnapping in violation of § 750.349 of the Michigan Compiled Laws (MCL).  *Montes*, 2002 WL 484613, at *1.  At the

conclusion of his trial, the jury found Montes guilty of kidnapping. *Id.* The trial judge then sentenced Montes to 360 to 720 months (30 to 60 years) of imprisonment. *Id.* at *4. Although the high end of Montes's sentence (720 months) fell below the statutory maximum of life imprisonment, *see* MCL § 750.349(3), the low end of his sentence (360 months) exceeded the minimum sentencing range of 81 to 135 months of imprisonment prescribed by Michigan's sentencing guidelines, *Montes*, 2002 WL 484613, at *4.

The trial court's determination was appealed and remanded for resentencing twice on the basis of a state law requiring the trial judge to make certain findings on the record before exceeding the minimum guidelines-mandated term of imprisonment. *See People v. Montes*, No. 121502, 673 N.W.2d 104 (Mich. Oct. 3, 2003) (unpublished table decision); *People v. Montes*, No. 223539 (Mich. Ct. App. Feb. 17, 2004); *People v. Montes*, No. 223539, 2004 WL 2389995 (Mich. Ct. App. Oct. 26, 2004). Ultimately, the Michigan Court of Appeals concluded that the trial court had sufficiently explained its above-guidelines minimum sentence on the second remand and therefore affirmed the judgment below. *People v. Montes*, No. 223539 (Mich. Ct. App. Feb. 28, 2005). The Michigan Supreme Court declined to review the case. *People v. Montes*, No. 128523, 705 N.W.2d 127 (Mich. Oct. 31, 2005) (unpublished table decision).

Montes, represented by counsel, then filed a petition for habeas relief pursuant to 28 U.S.C. § 2254. He raised two claims:

[1.]     Whether Mr. Montes' sentence exceeded the *Blakely* [*v. Washington*, 542 U.S. 296 (2004)] "statutory maximum" sentence by 18.75 years based on facts determined by the judge and not found by the jury contrary to the Fifth, Sixth, and Fourteenth Amendments.

. . . .

[2.]     Whether the trial court's failure to instruct the jury that the prosecution had the burden of proving the lack of consent and the court's instruction to the jury indicating that petitioner had the burden of raising a reasonable doubt as to consent, improperly shifted the burden of proof to petitioner, denying him due process of law[.]

The district court denied relief on both claims, concluding that (1) the first claim failed on the merits, and (2) the second claim was procedurally defaulted. *Montes v.*

*Trombley*, No. 1:06-cv-14539, 2008 WL 4613062, at \*4-\*8 (E.D. Mich. Oct. 14, 2008). In addition, the court declined to issue Montes a Certificate of Appealability (COA). *Id.* at \*8-\*9. Montes timely appealed. This court then granted a COA on Montes's first claim, reasoning that "this court has not yet determined, in a reasoned published opinion, whether *Blakely* applies to Michigan's indeterminate sentencing scheme."

## II. ANALYSIS

### A.     Standard of review

"In a habeas corpus appeal, we review the district court's legal conclusions de novo, but will not set aside its factual findings unless they are clearly erroneous." *Ivory v. Jackson*, 509 F.3d 284, 291 (6th Cir. 2007). "The standard for reviewing state-court determinations on habeas, by contrast, is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified at 28 U.S.C. § 2254(d)." *Id.* AEDPA provides that

> a federal court may not grant a writ of habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state court unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."

*Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002) (citation omitted) (quoting 28 U.S.C. § 2254(d)).

A state-court decision is considered "contrary to . . . clearly established Federal law" if the two are "diametrically different, opposite in character or nature, or mutually opposed." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotation marks omitted) (quoting *Webster's Third New International Dictionary* 495 (1976)). Alternatively, to be deemed an "unreasonable application of . . . clearly established Federal law," a state-court decision on the merits must be "objectively unreasonable," not simply incorrect. *Id.* at 409-12. The state court's findings of fact are presumed to be correct unless they are rebutted by clear and convincing evidence. *Benge v. Johnson*, 474 F.3d 236, 241 (6th Cir. 2007).

But there are exceptions to the requirement of AEDPA deference. For one, if a claim is fairly presented to the state courts, but those courts fail to adjudicate the claim on the

merits, then the pre-AEDPA standards of review apply. *Cone v. Bell*, 129 S. Ct. 1769, 1784 (2009). Under such review, questions of law, including mixed questions of law and fact, are reviewed de novo, and questions of fact are reviewed under the clear-error standard. *Brown v. Smith*, 551 F.3d 424, 430 (6th Cir. 2008).

**B.        Arguments of the parties**

Montes argues that the guidelines create a scheme in which a mandatory sentence is determined through judicial factfinding in violation of *Blakely* and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In response, the State asserts that Michigan's sentencing laws create an indeterminate-sentencing scheme. Under this scheme, the state trial judges determine the applicable *minimum* sentence pursuant to the sentencing guidelines, but the applicable *maximum* sentence is set by statute.

Montes's *Blakely* claim does not appear to have been adjudicated on the merits by the Michigan courts during his state-court appeals, and the State does not argue that this claim is procedurally defaulted. We therefore consider Montes's *Blakely* claim under pre-AEDPA standards, reviewing questions of law de novo and questions of fact under the clear-error standard. *See Brown*, 551 F.3d at 430.

**C.        The *Blakely-Apprendi* rule**

In *Blakely*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 301 (emphasis added) (quoting *Apprendi*, 530 U.S. at 490). This rule is limited by its own terms to judicial factfinding that increases the penalty beyond the maximum permitted by the relevant statute. *See id.* And, as the Court explained, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 303-04 (emphasis in original).

The *Blakely-Apprendi* rule does not prohibit all judicial factfinding in the sentencing context. It does not, for example, apply to laws that set the maximum sentence by statute but that permit a judge to determine the minimum sentence through judicial factfinding. *See,*

*e.g.*, *Harris v. United States*, 536 U.S. 545, 568-69 (2002) (holding that the Constitution permits a trial judge to find facts giving rise to a defendant's mandatory minimum sentence); *United States v. Cox*, 565 F.3d 1013, 1017 (6th Cir. 2009) ("*Apprendi* does *not* apply where a fact 'increases a defendant's mandatory *minimum* sentence but does not increase the *maximum* statutory range.'" (emphasis in original) (quoting *United States v. Copeland*, 321 F.3d 582, 602 (6th Cir. 2003))). And it does not preclude a judge from utilizing the preponderance-of-the-evidence standard when finding facts related to sentencing. *United States v. Conatser*, 514 F.3d 508, 528 (6th Cir. 2008) (explaining that "judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard . . . does not violate either Fifth Amendment due process rights, or the Sixth Amendment right to trial by jury" (citation and internal quotation marks omitted)).

The Supreme Court in *Blakely* itself concluded that indeterminate-sentencing schemes do not violate a defendant's Sixth Amendment rights:

> [T]he Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 308-09 (emphasis in original).

**D.    Michigan's sentencing scheme**

Michigan has adopted a sentencing scheme based in part on statutorily defined sentencing ranges and in part on sentencing guidelines. *See People v. Drohan*, 715 N.W.2d 778, 790 (Mich. 2006). The maximum penalty is set by statute, but the minimum penalty is determined by the sentencing court and must fall within a mandated guidelines range. *See id.* As explained by the Michigan Supreme Court:

> [In] all but a few cases [not implicated in *Drohan* or in the present case], a sentence imposed in Michigan is an indeterminate sentence. The maximum sentence is not determined by the trial court, but rather is set by law. Michigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence. However, a Michigan trial court may not impose a sentence greater than the statutory maximum. While a trial court may depart from the minimum guideline range on the basis of "substantial and compelling reason[s]," MCL 769.34(3); [*People v. Babcock*, 666 N.W.2d 231, 256-58 (Mich. 2003)], such departures, with one exception, are limited by statute to a minimum sentence that does not exceed "2/3 of the statutory maximum sentence." MCL 769.34(2)(b). Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the "maximum-minimum" sentence will always fall within the range authorized by the jury's verdict.

*Drohan*, 715 N.W.2d at 790 (third alteration in original) (footnotes omitted). The Michigan Supreme Court's interpretation of Michigan's sentencing laws is binding on the federal courts. *See Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008) ("In construing questions of state law, a federal court must apply state law in accordance with the controlling decisions of the highest court of the state.").

Two characteristics of Michigan's sentencing regime are critical to the proper disposition of the issue before us, as explained in greater detail in Part II.E. below. First, Michigan's maximum-minimum sentencing scheme is indeterminate because it sets a sentence "of an unspecified duration." *See Drohan*, 715 N.W.2d at 786 n.10, 790 (quoting *Black's Law Dictionary* (8th ed. 2004)). Second, the sentencing guidelines define only the *minimum* applicable sentence and do not set or increase the *maximum* sentence. *See id.* at 790.

**E.       Whether Michigan's sentencing laws violate the *Blakely-Apprendi* rule**

Montes argues on appeal that Michigan's sentencing guidelines create

> a legislatively mandated judicial factfinding process that leads to a specific numeric cell sentence which then becomes a legislatively mandated sentence that must be served. For *Blakely* purposes, a mandatory sentence is a mandatory sentence and it matters not if the mandatory aspect is an alleged "minimum" or an alleged "maximum" term, or both.

But Montes reads *Blakely* and *Apprendi* too broadly.  Courts interpreting *Apprendi* have recognized the distinction between mandatory minimums and mandatory maximums, with the distinction having constitutional significance.  *See, e.g.*, *Harris*, 536 U.S. at 568-69; *Cox*, 565 F.3d at 1017.  This is demonstrated by the Supreme Court's description in *Blakely* of the *Apprendi* line of cases: "In each case, we concluded that the defendant's constitutional rights had been violated because the judge had imposed a sentence greater than the maximum he could have imposed under state law without the challenged factual finding." *Blakely*, 542 U.S. at 303.  This court's recent decision in *Chontos v. Berghuis*, 585 F.3d 1000 (6th Cir. 2009), likewise explained that "*Harris v. United States* tells us that *Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum." *Id.* at 1002 (citations omitted).

Under Michigan law, a person convicted of violating the State's kidnapping statute may be punished "by imprisonment for life or any term of years or a fine of not more than \$50,000.00, or both."  MCL § 750.349(3).  The statutorily permissible punishments for kidnapping thus range from a monetary fine to life imprisonment.  *See id.*  This means that the trial judge in the present case had the authority to sentence Montes to life imprisonment based solely on the jury's verdict.  *See id.*  *Compare Blakely*, 542 U.S. at 305 (concluding that a state's sentencing laws violate the Sixth Amendment where "the judge's authority to impose an enhanced sentence depends on [a] finding [of fact]," and "the jury's verdict alone does not authorize the sentence," but "[t]he judge acquires that authority only upon finding some additional fact").  Accordingly, Montes does not have "a legal right to a lesser sentence." *See id.* at 309 (emphasis deleted).  The trial judge's sentencing of Montes to 360 to 720 months of imprisonment therefore does not violate the due process protections of the Fifth and Fourteenth Amendments or the jury trial right of the Sixth Amendment.  *See id.* at 309-10; *see also Chontos*, 585 F.3d at 1002 (reaching the same conclusion regarding a sentence imposed under Michigan's sentencing guidelines for first-degree criminal sexual conduct involving a person under the age of thirteen); *United States v. Conatser*, 514 F.3d 508, 528 (6th Cir. 2008) (explaining that a judge may utilize the preponderance-of-the-evidence standard when finding facts related to sentencing).

Moreover, Michigan's sentencing scheme, with the exception of a few circumstances not relevant here, is properly described as "indeterminate." *See Drohan*, 715 N.W.2d at 790.

A criminal defendant in Michigan is sentenced to a minimum and a maximum permissible term of imprisonment. *Id.* The minimum sentence is not a fixed, "determinate" sentence because an incarcerated person is "always subject to serving the maximum sentence provided for in the statute that he or she was found to have violated." *Id.* at 791. And, "the parole board retains the discretion to keep a person incarcerated up to the maximum sentence authorized by the jury's verdict." *Id.* Thus, "there is no guarantee that an incarcerated person will be released from prison after the person has completed his or her minimum sentence." *Id.* *Compare Cunningham v. California*, 549 U.S. 270, 276-77 (2007) (describing California's prior sentencing regime as "indeterminate" because "courts imposed open-ended prison terms (often one year to life), and the parole board—the Adult Authority—determined the amount of time a felon would ultimately spend in prison"). Michigan's sentencing laws similarly create an indeterminate-sentencing scheme. And because this scheme is indeterminate, it does not violate Montes's due process rights or his right to a jury trial. *See Blakely*, 542 U.S. at 309-10.

We wish to emphasize, however, that our holding today does not extend to aspects of Michigan's sentencing regime that had no application to Montes's sentence. In particular, this case does not require us to address the constitutionality of Michigan's "intermediate sanction" rule, which instructs the sentencing court to impose an intermediate sanction—not to exceed a 12-month jail term—when the upper limit of the defendant's guidelines range does not exceed 18 months, unless the court identifies a "substantial and compelling reason" for a harsher penalty. *See* MCL § 769.34(4)(a). Montes does not argue that, absent judge-found facts, he would have qualified for an intermediate sanction.

In sum, Michigan's substantive kidnapping statute provides a statutory range of permissible punishments for Montes. *See* MCL § 750.349(3). The statute defines the statutory maximum as life imprisonment. *Id.* Michigan's sentencing guidelines then provide the basis for determining Montes's minimum sentence. *See* MCL § 769.34(2). These guidelines mandate that Montes's minimum sentence be determined by a judicial factfinding process. *See* MCL § 769.34. Because this procedure relates only to the *minimum* sentence applicable to Montes as part of an *indeterminate* sentencing scheme, it does not violate Montes's due process rights or Montes's right to a jury trial. *See Blakely*, 542 U.S. at 309-

10; *Harris*, 536 U.S. at 568-69.  The district court therefore properly denied Montes's petition for a writ of habeas corpus.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.