NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0833n.06

Case No. 12-1919

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JEFFREY KITTKA, | ) | **FILED**<br>Sep 18, 2013<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Petitioner-Appellant, | ) |  |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| JACKIE FRANKS, | ) | COURT FOR THE EASTERN |
|  | ) | DISTRICT OF MICHIGAN |
| Respondent-Appellee. | ) |  |
|  | ) |  |

BEFORE: BATCHELDER, Chief Judge; GUY and BOGGS, Circuit Judges.

I.

ALICE M. BATCHELDER, Chief Judge. Kittka was charged in state court with two counts of second-degree criminal sexual conduct for touching his seven-year-old niece, M.M., in an inappropriate manner. The state court summarized the evidence against him:

> At trial, [M.M.'s] testimony established that she is eight years old and attends the 3rd grade. Defendant is her uncle and he is married to her aunt Debbie. They have a [son, who] is older than her. Sometimes she and her sister spend the night at Defendant's house. The last time she was [to] Defendant's house, she slept in the basement with Defendant and [his son]. [His son] slept on the couch, she slept on the floor and Defendant was behind her. When she woke up, Defendant had his hand under her pajamas. Defendant's fingers were touching her private parts where she goes pee. She pushed his hand away and he stopped. Defendant touched her private parts other times, but she could not remember how many times. When [she] got home, she told her mother that Defendant touched her private parts.

> Detective Mark Boody's testimony established that he is a juvenile detective with the Novi Police Department. Boody was present when Amy Allen from Care House interviewed [M.M.] Boody also interviewed Defendant at the police station. During

> the interview Defendant suggested that maybe he is used to sleeping next to his wife and maybe he touched [M.M.] in the way he touches his wife. However, at no point did Defendant say that [M.M.] was a liar or that she had lied in the past.

Kittka acknowledged to the detective that what M.M. said was probably true because he could not imagine that M.M. would lie about it. At trial he argued a defense of mistake, suggesting that he was asleep at the time and may have unconsciously touched M.M. because he was used to sleeping with his wife. Another niece, K.M., told the detective that Kittka had also touched her inappropriately, once touching her thigh while she was sleeping, and another time touching her inappropriately while they were wrestling. The detective testified at trial about what K.M. had told him.

Kittka was charged with two counts based on M.M.'s testimony that he had inappropriately touched her on prior occasions, but the jury only convicted Kittka of one count. The Michigan trial court sentenced Kittka under Michigan's indeterminate sentencing scheme to 18 months to 15 years of incarceration. Kittka appealed the decision to the Michigan Supreme Court, filed a motion for relief in the district court, and then unsuccessfully appealed the dismissal of that motion through the Michigan courts.

Kittka then filed the present habeas petition in the district court. He makes two arguments. At sentencing, the trial court relied on M.M.'s testimony (summarized above) and the second charged (but dismissed) count in calculating the offense variable points used under Michigan's indeterminate sentencing scheme to set the minimum sentence. Kittka argues that this constituted judicial fact-finding in violation of the Sixth Amendment and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Second, Kittka argues that his trial counsel was ineffective for failing to object to the introduction of K.M.'s testimony and for failing to object to the sentencing scheme described in the

first argument. We agree with the district court that both claims should be dismissed, and we therefore AFFIRM.

## II.

Kittka was a parolee when he filed his habeas petition and is now discharged. The case or controversy requirement of Article III requires that a defendant in a criminal case "wishing to continue his appeals after the expiration of his sentence must suffer some 'continuing injury' or 'collateral consequence' sufficient to satisfy Article III." *United States v. Juvenile Male*, 131 S. Ct. 2860, 2864 (2011). That "collateral consequence" must be "traceable to the challenged portion of the sentence." *Id*. (internal quotation marks omitted).

When a defendant challenges his *conviction*, the Supreme Court is willing to assume that collateral consequences exist. *See Juvenile Male,* 131 S. Ct. at 2864 ("When the defendant challenges his underlying *conviction*, this Court's cases have long presumed the existence of collateral consequences."). We will presume on this basis that collateral consequences exist and so conclude that Kittka's ineffective-assistance claim, as a challenge to his conviction, is not moot.

We find as well that Kittka still suffers from the collateral consequences of his sentence. Kittka is classified as a sex offender because of his conviction, not because of his sentence. Kittka argues, though, that the inclusion of his picture in the State Department of Correction's online database of sex offenders constitutes a collateral consequence of his sentence because, had he received the appropriate sentence, he would no longer be listed in the database. The district court accepted this argument but noted that Kittka had failed to cite "any case law supporting the contention." The "collateral consequences" category is quite broad and includes such things as sex-

offender registration and notification requirements, and the right to vote, engage in business, hold office, and serve as a juror. *See Leslie v. Randle*, 296 F.3d 518, 522 (6th Cir. 2002). Given this, we agree with the district court that inclusion in the online database of sex offenders likely counts as a collateral consequence of Kittka's sentence. Thus, we are able to consider Kittka's claims.

**III**.

Kittka first argues that the trial court violated *Apprendi* at sentencing by using Kittka's second charged count of sexual conduct and M.M.'s above-quoted testimony that Kittka had touched her "other times" to find that the offense of conviction was part of a "pattern" of criminal conduct. This finding, argues Kittka, constituted judicial fact-finding in violation of *Apprendi* and the Sixth Amendment right to trial by jury.

**A.**

Michigan has an indeterminate sentencing scheme. Under that scheme, a maximum sentence for an offense is determined by statute. *People v. McCuller*, 739 N.W.2d 563, 570 (Mich. 2007) (citing Mich. Comp. Laws § 769.8(1)). The minimum sentence is defined by a range. *Id*. (citing Mich. Comp. Laws § 769.34(2)). That range is defined by a set of mandatory sentencing guidelines and is determined by considering the offense variables (OVs), prior record variables (PRVs), and the offense class of the defendant. *See id*. (citing Mich. Comp Laws § 777.21(1)). The minimum sentence range is found by totaling the OV's and PRV's and locating the intersection of the appropriate numbers on a grid-chart.

There are three types of "cells" in the grid of OV's and PRV's. If the lower and upper limits of the minimum range are both more than 12 months, the judge must sentence the defendant to a

state prison term, absent certain exceptions. This is called a "prison cell." If the upper limit of the minimum sentence exceeds 18 months and the lower limit is under 12 months, the judge may either sentence the defendant to a state prison term or to a lesser "intermediate sanction." This is called a "straddle cell." Mich. Comp. Laws § 769.34(4)(c). Finally, if the upper limit of the minimum sentence is under 18 months, the judge must impose an "intermediate sanction" a punishment that may include imprisonment in the county jail for up to a year. Mich. Comp. Laws § 769.34(4). If the judge offers a "substantial and compelling reason" in writing for doing so, he may impose a stricter sentence. *Id*. This third category is called an "intermediate sanction cell."

Here, the jury convicted Kittka of one count of criminal sexual conduct in the second degree in violation of Mich. Comp. Laws § 750.520c(1)(a). Such a conviction is punishable "[b]y imprisonment for not more than 15 years." *Id*. at (2)(a). This is the statutory maximum for his offense. The jury acquitted him of a charged second count of the same offense. The trial court, however, took the second charge into account at sentencing and assessed 25 offense variable (OV) points because "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." *See* Mich. Comp. Laws § 777.43(1)(c). This OV score placed Kittka's minimum sentence in a "straddle cell." The judge chose *not* to give Kittka an intermediate sanction, choosing instead to give him a term of imprisonment from 18 months to 15 years. Had the judge not assessed the 25 offense variable points, Kittka's minimum sentence would have fallen into an intermediate sanction cell, and the judge would have been required to sentence Kittka to a maximum of 12 months in county jail, absent a "substantial and compelling reason" to send Kittka to state prison.

Kittka's argument is simple. He was entitled to an "intermediate sanction" and so to a maximum jail term of 12 months. The only reason he received a longer prison term was because the judge, without a jury's finding beyond a reasonable doubt, concluded that Kittka had engaged in multiple counts of criminal sexual conduct. This increased his offense variable points and placed him in a straddle cell, thus permitting his sentence of 18 months to 15 years. Thus, according to Kittka, because the judge's fact-finding resulted in a sentence of more than 12 months in county jail, the judge's fact-finding violated *Apprendi*.

We accord AEDPA deference in reviewing this issue. AEDPA deference applies "if the state court conducts any reasoned elaboration of an issue under federal law." *Fleming v. Metrish*, 556 F.3d 520, 531 (6th Cir. 2009). Indeed, AEDPA deference may apply even where there is not any such elaboration. *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011) ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. . . . Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.") Here, the Michigan Court of Appeals found that this sentencing issue was not preserved at trial, but it also addressed the merits of the claim, conducting a "reasoned elaboration" on the merits and, quoting *People v. Drohan*, 715 N.W. 2d 778, 791 (Mich. 2006), concluded that "the Michigan system is unaffected by the holding in *Blakely,*" and "[d]efendant's recourse to *Blakely* . . . is thus unavailing." *People v. Kittka*, 2007 WL 1490471 at *2 (Mich. App. 2007). Habeas relief may not be granted as to this claim, therefore, unless the state court's decision "was contrary to, or involved an unreasonable

6

application of, clearly established [f]ederal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). After considering this claim on the merits, the district court agreed with the state court that the claim should be dismissed. *Kittka v. Franks*, 2012 WL 2367162 at *5-6. (E.D. Mich. 2012).

**B.**

The Supreme Court in *Alleyne v. United States* held that any fact that increases a mandatory minimum sentence "increases the penalty for a crime" and so "must be submitted to the jury." 133 S. Ct. 2151, 2155 (2013). *Alleyne* expressly overruled *Harris v. United States*, 536 U.S. 545, 568 (2002) (holding that increases in a minimum sentence based on judicial fact-finding do not violate the Sixth Amendment because a minimum sentence does not alter the prescribed statutory maximum). *See Alleyne*, 133 S. Ct. at 2155. However, when the state court considered this case, *Alleyne* had not been decided and *Harris* was still good law. Our review therefore is premised entirely on the Supreme Court's pre-*Alleyne* decisions and does not address the effect of *Alleyne* on either Michigan's indeterminate sentencing scheme or mandatory minimum sentences imposed under that scheme. *See Greene v. Fisher*, 132 S. Ct. 38, 44 (2011).

Whether Michigan's "intermediate sanction" sentencing violates the Sixth Amendment is not a matter of clearly established Supreme Court precedent. The Supreme Court has not addressed any analogous provision, and the Sixth Circuit has expressly recognized that it is an unanswered question. *Montes v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010). On the other hand, Michigan's Supreme Court has expressly found that "intermediate sanction" sentencing is constitutional. That court explained:

7

> A sentencing court scores the OV's only to calculate the recommended range for the *minimum* portion of the defendant's sentence, not to arrive at the defendant's maximum sentence, which is set by statute. The conditional limit on incarceration contained in MCL 769.34(4)(a)    an intermediate sanction    does not establish the defendant's statutorily required maximum sentence authorized by the jury's verdict or the guilty plea, but is instead a matter of legislative leniency, giving a defendant the opportunity to be incarcerated for a period that is *less* than that authorized by the jury's verdict or the guilty plea.

*People v. McCuller,* 739 N.W.2d 563, 566 (Mich. 2007) (citing *People v. Harper*, 739 N.W.2d 523, 527 (Mich. 2007)).

Clearly established federal law, as announced by the Supreme Court, does not contradict this logic. Accordingly, we cannot grant Kittka's habeas petition here.

## IV.

Kittka also brings a claim of ineffective assistance of counsel, alleging that his trial counsel was ineffective for failing to object to hearsay testimony, and for failing to object to the 25-point offense variable increase at Kittka's sentencing (the claim underlying the *Apprendi* claim). Kittka also claims that his appellate counsel on direct appeal was ineffective for not bringing an ineffective-assistance-of-trial-counsel claim. The latter claim allegedly serves as "cause" for the procedural default of the former claim in state court.

Kittka brought these claims for the first time in a collateral action as part of his motion for relief from judgment. The trial court held that Kittka's ineffectiveness claims were procedurally defaulted under Mich. Ct. R. 6.508(D)(3), which states that a court may not grant collateral relief on grounds that " could have been raised on appeal from the conviction and sentence," unless the movant shows good cause for the failure and actual prejudice. The trial court reviewed the evidence

against Kittka and concluded that the alleged errors in his trial representation did not actually prejudice Kittka. The state appellate court and supreme court affirmed in summary fashion the trial court's denial of defendant's motion, based on Mich. Ct. R. 6.508(D).

State court dismissal based on Mich. Ct. R. 6.508(D) constitutes an adequate and independent state ground for the dismissal of this claim. A habeas claim must be dismissed if: "(1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default." *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010)(en banc) (citing *Tolliver v. Sheets,* 594 F.3d 900, 928 n. 11 (6th Cir. 2010)). Kittka failed to comply with Mich. Ct. R. 6.508(D)(3), and Michigan courts enforced the rule and dismissed Kittka's ineffectiveness claims. The Sixth Circuit has routinely found that procedural default under rule 6.508(D) constitutes an independent and adequate state ground for a conviction where that ground is explained by the state court. *See, e.g.*, *id.*

Thus, Kittka's ineffectiveness claims are procedurally defaulted unless he can show cause and prejudice excusing the default. The alleged cause for the procedural default of his ineffectiveness claim is the alleged ineffectiveness of appellate counsel, who did not bring the claim on direct appeal. Ineffective appellate counsel is sufficient to excuse procedural default if it can be shown that appellate counsel "unreasonably failed to discover" a "nonfrivolous issue" on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

9

The district court found that appellate counsel was not ineffective because trial counsel's performance was not deficient. The alleged "hearsay" evidence to which trial counsel failed to object was the testimony of the detective that a second niece had also reported that Kittka had touched her inappropriately.[1] According to Kittka, trial counsel compounded the error by asking questions about the incident on cross-examination. The federal district court correctly found that trial counsel was not deficient here. The strength of M.M.'s testimony left Kittka with only a defense of mistake. Evidence of prior bad acts is admissible to show an absence of mistake under Michigan Rule of Evidence 404(b)(1). The detective's testimony described conduct like that of the charged offense     inappropriate touching of a minor     and was directly relevant to Kittka's defense. Thus, the objection would reasonably have been denied, and counsel was not ineffective for failing to make a "futile objection." Kittka's argument to the contrary is unpersuasive. Appellate counsel was not ineffective for failing to bring this claim on appeal.

Likewise, appellate counsel was not ineffective for failing to raise trial counsel's failure to object to the sentencing calculations. The underlying claim here is the *Apprendi* issue discussed above. Although the state appellate court found that Kittka had defaulted the issue because of trial counsel's failure to object, that court also rejected the argument on the merits. Because the claim underlying the objection was decided on the merits and dismissed, Kittka was not prejudiced by trial counsel's failure to preserve it for appeal.

---

[1]The trial court labeled the potential objection "hearsay" but treated it as a character-evidence objection. [R. 10 at 11, Page ID 794.] The briefs are unclear; here it is treated as a potential character-evidence objection. Although presentation of this evidence second-hand through the detective may have constituted hearsay, there is no reason to think that the second niece was unavailable to testify. Given that fact, trial counsel had every reason not to object to the hearsay element. Defense counsel could reasonably have strategized that it would be better for the defense if the evidence came in through the detective.

We agree with the district court that Kittka's ineffectiveness claims should be dismissed because they were procedurally defaulted in state court, and so AFFIRM.

**V.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court on both claims and so dismiss the habeas petition.