NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0207n.06

No. 16-2468

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ALFRED SHEFFIELD,                           )
                                            )
    Petitioner-Appellant,                   )
                                            )
v.                                          )       ON APPEAL FROM THE
                                            )       UNITED STATES DISTRICT
SHERRY BURT, Warden,                        )       COURT FOR THE EASTERN
                                            )       DISTRICT OF MICHIGAN
    Respondent-Appellee.                    )
                                            )

FILED

Apr 20, 2018

DEBORAH S. HUNT, Clerk

BEFORE:    SILER, BATCHELDER, and DONALD, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge**.  Petitioner-Appellant Alfred Sheffield appeals the district court's denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254.  Sheffield alleges that he is entitled to habeas relief because the state court improperly considered him a habitual fourth offender when calculating his sentence.  We find that Sheffield procedurally defaulted this claim and AFFIRM the judgment of the district court.

I.

The Michigan Court of Appeals summarized the facts of the case as follows:

> On July 20, 2009, while walking his dog in an alley between Sturdevant and Highland Streets in Highland Park, Michigan, Robert Wilson noticed a body. Wilson immediately notified the police, who arrived at the scene and identified the victim as Mary McCullum. McCullum was found in some tall grass with her pants unbuttoned and unzipped. According to officers on the scene, judging from the tracks formed in the tall grass, her body had been dragged to the location where she was found. As police worked the case, they

eventually were told of two possible suspects, "Al" and "Ace."[1] Following a lead that defendant owned a van which matched a description given by an anonymous source, defendant voluntarily appeared at the Highland Park Police Station for an interview. After initially telling detectives that he did not know the victim or anyone named Ace, he subsequently changed his story and told police that on July 20, 2009, at around 1:30 a.m., he drove Ace to a gas station where they met the victim. Ace then propositioned the victim for sex. According to defendant's statement, he drove Ace and the victim to a location where they could "take care of business." After defendant left his van, he noted that people were coming up and buying drugs from Ace, and eventually defendant asked Ace if he was finished, and Ace responded that he thought the victim had stolen money from him. According to defendant, he suggested that Ace search the victim. Defendant also stated that he drove Ace and the victim to another location. It was at this location, an alley between Highland and Sturdevant, that defendant stopped the van and Ace dragged the victim out of the van and beat her. According to defendant's statement, when he confronted Ace, Ace threatened to kill defendant. On August 14, 2009, Murray was arrested and charged in the killing of Mary McCullum.

On August 19, 2009, police arrested defendant and impounded his van. A second interview of defendant was conducted. Although in the first statement defendant had asserted that he left Ace and the victim in the alley, to be flagged down by Ace at a different location, in his second statement, defendant told police that he observed Ace stomp on the victim's head, drag her to a nearby fence and hit her with a brick. He also told police that Ace may have used a knife from defendant's van to stab the victim. Defendant told police that following the killing of the victim, Ace requested to be driven home and defendant complied.

*People v. Sheffield*, No. 296780, 2011 WL 2623383, at *1 (Mich. Ct. App. July 5, 2011) (footnote in original).

In 2010, a Michigan jury convicted Sheffield of second-degree murder under an aiding and abetting theory. The trial court sentenced Sheffield as a habitual fourth offender to imprisonment for forty to sixty years with credit for 189 days.

Following his conviction and sentencing Sheffield initiated a number of appeals and post-conviction proceedings. On direct appeal before the Michigan Court of Appeals, Sheffield filed a brief with the aid of counsel and a permitted supplemental *pro se* brief (the "Standard 4 brief,"

---

[1] "Ace" was later identified as Arthur Henry Murray. Murray pleaded guilty to second-degree murder and was sentenced to 12 to 20 years' imprisonment on February 16, 2010.

*see* Michigan Supreme Court Administrative Order 2004-6, Standard 4), raising numerous challenges to his conviction and sentence. None of these challenges related to the sentencing claim he currently brings. The Michigan Court of Appeals found his challenges meritless and affirmed his conviction and sentence. *See Sheffield*, 2011 WL 2623383, at *2–6. Sheffield then filed an application for leave to appeal to the Supreme Court of Michigan. Four months after filing his application for leave to appeal, Sheffield filed an amended application arguing that the state court improperly counted one of the felonies used to designate him as a habitual fourth offender—a concealed weapon charge. The Michigan Supreme Court denied leave to appeal in a one-sentence order on December 28, 2011, because it was "not persuaded that the questions presented should be reviewed." *See People v. Sheffield*, 806 N.W.2d 331, 331 (Mich. 2011).

At this point Sheffield attempted to gain relief from the trial court that had sentenced him by filing a motion for relief from judgment. In his motion Sheffield lodged a number of arguments, including that his sentence was based on inaccurate information because the trial court improperly applied not just one, but two felonies to his record when sentencing him. The trial court denied Sheffield's motion and the Michigan Court of Appeals and Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Sheffield*, No. 312846 (Mich. Ct. App. June 5, 2013); *People v. Sheffield*, 843 N.W.2d 211 (Mich. 2014).

Sheffield filed this habeas corpus petition before the district court on February 21, 2014, asserting the numerous grounds for relief, including the ground that we consider here—that his habitual fourth offender status was based on inaccurate information. Despite the State's arguing that several claims, including this claim, were procedurally defaulted, the district court declined to conduct a procedural default analysis of the claims and proceeded to the merits because "an

analysis of whether Petitioner's claims are procedurally defaulted 'adds nothing but complexity to the case.'" On the merits, the district court denied Sheffield relief on each of his claims and also denied a certificate of appealability.

Sheffield appealed and filed an application for a certificate of appealability, which this court granted with respect to Sheffield's habitual fourth offender sentencing issue. We find that Sheffield procedurally defaulted this claim and is not entitled to relief.

## II.

We review de novo a district court's legal conclusions and mixed questions of law and fact and review its factual findings for clear error. *Armstrong v. Morgan*, 372 F.3d 778, 781 (6th Cir. 2004); *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). Sheffield filed his petition on February 21, 2014; therefore, the Antiterrorism and Effective Death Penalty Act (AEDPA) governs his request. Under AEDPA, a federal court shall not grant a habeas petition with respect to any claim that was adjudicated on the merits in the state courts unless the adjudication resulted in a decision that: (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) was based upon an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d). "AEDPA sets forth a heavy burden for a petitioner to overcome." *Tibbetts v. Bradshaw*, 633 F.3d 436, 442 (6th Cir. 2011); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102.

Sheffield argues that we should—as the district court did—decline to address the government's procedural default argument. But federal courts "may not review federal claims

that were procedurally defaulted in state court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *see also Jeffries v. Burton*, 715 F. App'x 490, 493–94 (6th Cir. 2017) (Batchelder, J., concurring). This "fundamental tenet[] of federal review of state convictions," *Davila*, 137 S. Ct. at 2064, ensures that federal courts show the respect to "the States and the States' procedural rules" that our federalist system requires, *Shorter v. Ohio Dep't of Rehab. & Corr.*, 180 F.3d 723, 725 (6th Cir. 1999) (quoting *Coleman v. Thompson*, 501 U.S. 722, 726 (1991)). Our ignoring procedural default arguments and providing an additional layer of appellate review to claims that have been procedurally defaulted in state court causes "significant harm" to "the important interest in finality served by state procedural rules," *Coleman*, 501 U.S. at 750, even when we ultimately deny the claims on the merits.

The Supreme Court has instructed us that "the procedural-bar issue should ordinarily be considered first." *Lambrix v. Singletary*, 520 U.S. 518, 524 (1997). Although we have no obligation to raise sua sponte the issue of procedural default, *Trest v. Cain*, 522 U.S. 87, 89 (1997), when a State raises the issue—as it has here—we should take its arguments seriously and try to determine whether the claims have been procedurally defaulted. To be sure, the procedural default question will still not be clear in some cases and "[j]udicial economy might counsel" addressing the merits to avoid "complicated issues of state law." *Lambrix*, 520 U.S. at 525. However, where a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue. *Cf. Duyst v. Rapelje*, 483 F. App'x 36, 44–45 (6th Cir. 2012) (addressing merits only because state procedural default law was unsettled); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (bypassing the procedural default issue in an "especially complex" case where the state procedural rule was enacted "long after" defendant's conviction and direct appeal).

We review de novo the question of whether a petitioner's federal habeas claim is barred by procedural default. *Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013). Sheffield claims that the trial court sentenced him based on inaccurate information. Sheffield brought this claim (that two felonies were misapplied to sentence him as a habitual fourth offender) for the first time in a collateral action before the state trial court as part of his motion for relief from judgment. The trial court held that Sheffield failed to establish entitlement to relief under Michigan Court Rule 6.508(D) because he failed to meet the "good cause" and "actual prejudice" requirements. Sheffield had the opportunity in his Standard 4 brief on direct appeal to make arguments he thought appellate counsel failed to raise, but he did not. Therefore, he could not meet the burden of Michigan Court Rule 6.508(D).

State court dismissal based on Michigan Court Rule 6.508(D) constitutes an adequate and independent state ground for dismissal of this claim. *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013). A habeas claim must be dismissed if: "(1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default." *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc) (quoting *Tolliver v. Sheets*, 594 F.3d 900, 928 n.11 (6th Cir. 2010)).

We have routinely found that procedural default under Michigan Court Rule 6.508(D) constitutes an independent and adequate state ground for a conviction where that ground is explained by the state court. *See, e.g.*, *id*. at 290–91; *Kittka*, 539 F. App'x at 674. Sheffield failed to comply with Michigan Court Rule 6.508(D)(3) and Michigan courts enforced the rule

and dismissed Sheffield's sentencing claim. Therefore, Sheffield's sentencing claim is procedurally defaulted unless he can show both cause and prejudice excusing the default.

Sheffield alleges that the cause for the procedural default of his sentencing claim is the ineffectiveness of appellate counsel for failing to bring the habitual fourth offender sentencing claim on direct appeal. Ineffective appellate counsel is sufficient to excuse procedural default if a petitioner can show that appellate counsel "unreasonably failed to discover" a "nonfrivolous issue[]" on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). To succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness" and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *see also McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000).

Sheffield's ineffective assistance claim fails. An appellate attorney is not required to raise every conceivable issue. *People v. Reed*, 499 N.W.2d 441, 445 (Mich. Ct. App. 1993). The failure to assert all arguable claims is not sufficient to overcome the presumption that counsel functioned as a reasonable appellate attorney in selecting the issues presented. *Id.* Here, appellate counsel raised a reasonable sufficiency of the evidence claim, for which Sheffield also advocated in his Standard 4 brief. And as the Michigan trial court and the government note, Sheffield had the opportunity to raise any issues in his Standard 4 brief on direct appeal that he felt his appellate counsel should have raised. He did not raise the issue.[2]

---

[2] In addition, though Sheffield claims otherwise, the record strongly suggests that Sheffield had knowledge of the convictions used to calculate his fourth habitual offender status prior to sentencing and had the opportunity to review that list of convictions with his counsel. During the sentencing hearing, the prosecution noted that Sheffield was a habitual fourth offender, that he had been charged in the information to reflect that status, and that the guideline range would be 270 to 900 months. Sheffield's counsel stated he had gone over the presentence investigation report that morning with Sheffield, had previously reviewed with Sheffield the original complaint, informations, and the list of Sheffield's prior convictions, and confirmed that "[t]hose [convictions] are his record."

III.

Sheffield also argues that, even if he cannot show both cause and prejudice, his procedural default should be excused because this Court's "failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. "A 'miscarriage of justice' exists only if the record is 'devoid of evidence pointing to guilt.'" *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998) (quoting *United States v. Cannon*, 981 F.2d 785, 790 (5th Cir. 1993)). The exception therefore applies only where there is a colorable claim of factual innocence. *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986).

Sheffield argues actual innocence of being a habitual fourth offender, not of the underlying crime for which he was convicted. This argument fails. Actual innocence is not the same as legal innocence. *See Whitener v. Snyder*, 23 F. App'x 257, 258–59 (6th Cir. 2001) (citing *Charles v. Chandler*, 180 F.3d 753, 757 (6th Cir. 1999)); *see also Couch v. Holland*, No. 0:10-cv-00046-HRW, 2010 WL 2219583, at *3–4 (E.D. Ky. 2010) ("Case law distinguishes claims falling under the label of 'legal innocence' from claims of 'actual innocence' *of the underlying offense charged in the indictment*.").

IV.

For the foregoing reasons, we AFFIRM the denial of habeas relief.